**John Wayne KEMPLEN**

v.

**STATE OF MARYLAND.**

**Civ. A. No. 19727.**

United States District Court

D. Maryland.

Jan. 14, 1969.

MEMORANDUM OPINION
AND ORDER

WATKINS, District Judge.

Petitioner in his instant application to this court for federal habeas corpus relief has submitted a statement of "facts" and relying upon Kent v. United States, 1966, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 and In re Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 urges that these facts evidence such a denial of due process of law as to void the waiver of juvenile jurisdiction proceedings, in his case, which proceedings resulted in the Circuit Court for Harford County assuming jurisdiction over petitioner. Petitioner was subsequently found guilty by the Circuit Court of

Harford County of three counts of malicious destruction of property and three counts of grand larceny. He received concurrent sentences totalling two years and was referred to Patuxent Institution where he is presently confined for examination and report as to his status as a possible defective delinquent. In order to dispose of the questions of law raised by the petitioner in his petition this court will assume, without so deciding, that the "facts" alleged by petitioner are correct.

Initially it should be noted that Kent dealt solely with, and was expressly limited to, the interpretation to be given the Juvenile Court Act of the District of Columbia. Although invited by the brief of amicus curiae to go further than the language of the statute therein involved and to rest its decision on broad constitutional guaranties, the Supreme Court declined saying the "Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit provide an adequate basis for decision of this case, and *we go no further*." (Kent v. United States, supra, 383 U.S. at 556, 86 S.Ct. at 1055; emphasis supplied). Kent was followed by Gault which was a decision based on constitutional grounds but was a decision expressly and strictly limited in its application to one type of proceeding, that is the proceeding by which a juvenile is adjudicated a "delinquent." The Supreme Court clearly delineated the area in which it moved as follows:

"We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. See note 48, infra. We consider only the problems presented to us by this case. These relate to the

*proceedings by which a determination is made as to whether a juvenile is a 'delinquent'* as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." (In re Gault, supra, 387 U.S. at 13, 87 S.Ct. at 1436; emphasis supplied).

Thus neither Kent, being—at least when announced—expressly limited to an interpretation of statutory language, or Gault, being—at least as of now—expressly limited to "proceedings by which a determination is made as to whether a juvenile is a 'delinquent' * * *" is directly in point in the instant case where an attack on constitutional grounds is being made not on a determination of delinquency hearing but on a waiver of juvenile jurisdiction hearing, the former proceeding partaking more of an adjudication of guilt and the latter more of a finding of probable cause to initiate further action.

But what of the impact of Kent and Gault, if any, on "the totality of the relationship of the juvenile and the state?" It is not unfair to say that the configuration of the dark side of the moon is today clearer to man. The Court of Special Appeals of Maryland succinctly stated the problem posed by the Kent-Gault decisions when it said that while Gault "is clearly a constitutional decision, it is limited to proceedings which determine juvenile delinquency, and it is unclear whether *Kent* and *Gault* together establish constitutional principles applicable to waiver of jurisdiction proceedings." (State v. Hance, 1967, 2 Md.App. 162, 167, 233 A.2d 326, 329; see also: Hammer v. State, 1968, 3 Md.App. 96, 99, 238 A.2d 567). Then the Court of Special Appeals of Maryland in both the Hance case and the Hammer case decided to assume the "assuming without deciding" approach and held that "[a]ssuming, without deciding, that these cases do collectively articulate the proposition that the federal constitution requires * * *" new procedures, this proposition, if such a proposition exists, should not be applied retroactive-

ly. (State v. Hance, supra, 2 Md.App. at 167, 233 A.2d at 329; see also: Hammer v. State, supra, 3 Md.App. at 99, 238 A.2d 567). The doubt of the Court of Special Appeals of Maryland as to the meaning and effect, if any, of the Kent-Gault decisions on waiver of jurisdiction proceedings is most understandable, particularly in view of the Supreme Court's own recent comments in In re Whittington, 1968, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625. The court remanded that case to the Ohio Court of Appeals for Fairfield County for reconsideration "in view of Gault" of the petitioner's constitutional attacks upon the proceedings leading to his adjudication as a delinquent. Merely in passing the court remarked as to an order, rendered subsequent to the delinquency adjudication, relinquishing jurisdiction over the juvenile to the adult court:

> "Upon such remand, the Ohio court *may*, of course, also consider the impact, *if any*, on the questions raised by petitioner of the intervening order of the Juvenile Court requiring him to face trial in the adult courts." (In re Whittington, supra, 391 U.S. at 344, 88 S.Ct. at 1508; emphasis supplied).

"May", "if any" scarcely suggest that at least as of the date of the Whittington decision the Supreme Court itself was of the belief that Gault clearly established new procedures applicable to waiver of jurisdiction proceedings. Indeed, Justice Byron R. White, joined by Justice Hugo L. Black in a dissent on procedural grounds not here relevant, in discussing the waiver of jurisdiction order in the Whittington case stated that he did "not believe that turnover proceedings require all of the formalities which should attend a determination of delinquency for purposes of final disposition in the Juvenile Court itself." (In re Whittington, supra, 391 U.S. at 345, 88 S.Ct. at 1509). In view of the presently existing considerable doubt as to just what formalities are required in a waiver of jurisdiction proceeding this court has decided to take the solomonic approach adopted by the Court of Special Appeals of Maryland in the Hance and Hammer cases referred to above and to assume for the purposes of decision in the instant case, without so deciding, that Kent and Gault "do collectively articulate the proposition that the federal constitution requires that counsel be afforded to indigent juveniles at waiver hearings". (State v. Hance, supra, 2 Md.App. at 167, 233 A.2d at 329).

■ Petitioner's waiver of jurisdiction hearing was held on February 18, 1965. This fact raises the question of whether or not the requirement, if such it be, that counsel be afforded to indigent juveniles at *waiver* hearings as well as other procedures set out in the Kent-Gault decisions is to be given retrospective application. The Supreme Court has, in a number of cases, set forth the criteria by which this determination is to be made. That court in Johnson v. New Jersey, 1966, 384 U.S. 719, 726, 86 S.Ct. 1772, 1777, 16 L.Ed.2d 882, after citing Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, said in part:

> "* * * These cases establish the principle that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application.' 381 U.S., at 628, [85 S.Ct. at 1737]; 382 U.S., at 410, [86 S.Ct. at 461]. These cases also delineate criteria by which such an issue may be resolved. We must look to the purpose of our new standards governing police interrogation, the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of Escobedo and Miranda. See 381 U.S., at 636, [85 S.Ct. at 1741]; 382 U.S., at 413, [86 S.Ct. at 464].

> * * * * * * 

> *"We here stress that the choice between retroactivity and nonretroactiv-*

*ity in no way turns on the value of the constitutional guarantee involved.* The right to be represented by counsel at trial, applied retroactively in Gideon v. Wainwright, supra, [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799], has been described by Justice Schaefer of the Illinois Supreme Court as 'by far the most pervasive * * * [o]f all of the rights than an accused person has.' Yet Justice Brandeis even more boldly characterized the immunity from unjustifiable intrusions upon privacy, which was denied retroactive enforcement in Linkletter, as 'the most comprehensive of rights and the right most valued by civilized men.' To reiterate what was said in Linkletter, we do not disparage a constitutional guarantee in any manner by declining to apply it retroactively.

*"We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based.* Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. Accordingly as Linkletter and Tehan suggest, we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question.' 381 at 629, [85 S.Ct. at 1737]; 382 U.S., at 410, [86 S.Ct. at 461]." (Emphasis supplied).

And if there is one dominant theme which runs throughout the discussion by the Supreme Court in the Johnson case of retroactivity *it is that retroactive effect has been given to constitutional rules of criminal procedure solely where the basic, fundamental truthfulness and accuracy of the guilt-determining process* are in issue. The court stressed its interest in and concern about "the reliability of the fact-finding process at trial" and "the integrity of the truth-determining process at trial"; "declined to apply retroactively the rule laid down in Mapp v. Ohio, [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] * * * [relying] in part on the fact that the rule affected evidence 'the reliability and relevancy of which is not questioned' "; and gave retroactive effect to other rules where in "each instance we concluded that retroactive application was justified because the rule affected *'the very integrity of the fact-finding process'* and averted *'the clear danger of convicting the innocent.'* Linkletter v. Walker, 381 U.S., at 639, [85 S.Ct. at 1743].; Tehan v. [United States ex rel.] Shott, 382 U. S., at 416 [86 S.Ct. at 465]."

Applying these tests then to the waiver of jurisdiction hearing challenged in the instant case, it becomes immediately apparent that any new procedures required by the Kent-Gault decisions, if such new requirements in fact there be, should not be applied retroactively. First and foremost a waiver of jurisdiction hearing is not a guilt-determining process, the integrity of which so concerned the Supreme Court in the Johnson case; it partakes more of a preliminary hearing establishing probable cause for the initiation of further action. Bizarrely enough if waiver is granted and the adult court assumes jurisdiction the party in question is then afforded prior to and at trial—the guilt determining proceeding—all of the constitutional "safeguards" which he now complains were denied him. Circuit Judge Simon E. Sobeloff, of the United States Court of Appeals for the Fourth Circuit, then Chief Judge of the Court of Appeals of Maryland, in discussing the waiver of jurisdiction proceedings spelled out by the Maryland legislature characterized that proceeding as being one in which the court's inquiry is addressed to whether or not a crime in fact has been committed and not to the guilt or innocence of the juvenile.

"* * * The Juvenile *Court,* in determining whether or not jurisdiction can be waived under Article 26, § 53, *must determine whether the act or acts* with which the child is charged

with committing *would amount to a misdemeanor or felony* if committed by an adult. Appellee submits that no crime could have been committed in this case even if the accused were an adult; that the Juvenile Court, therefore, could not waive jurisdiction; and that the Circuit Court for Prince George's County did not acquire jurisdiction. The answer is the simple one already indicated: the question of the effectiveness of a waiver of jurisdiction by the Juvenile Court under Article 26, § 53, is within the power of a court of general criminal jurisdiction to decide. Its determination can be appealed directly, but may not be attacked collaterally." (Superintendent of Maryland State Reformatory for Males v. Calman, 1953, 203 Md. 414, 425, 101 A.2d 207, 212; emphasis supplied).

The distinction between a waiver of jurisdiction proceeding and a guilt finding proceeding was carefully pointed out in Mordecai v. United States, D.C.D.C. 1966, 252 F.Supp. 694, 703:

"Moreover, the right recognized in Black is not one related to the truthfulness of the guilt-determining process. The presence of counsel at a waiver hearing would seem to have even less to do with the 'fairness of the trial—the very integrity of the fact-finding process,' Linkletter v. Walker, supra, 381 U.S. at 639, 85 S. Ct. at 1743—than the rule forbidding prosecutors to comment on the accused's failure to testify which was considered in *Tehan* and found not to be aimed at guaranteeing a fair trial. *Black* rests not on any notion that an innocent man may be found guilty if counsel is not present at the waiver proceedings but on the growing awareness that the process by which

the State deals with criminal conduct is an intricate one in which counsel may be helpful at every stage—not only during the trial. This humanitarian rule, although properly a subject for future application, should not be available to reverse convictions following fair trials long after they have become final."

This same approach was taken again by the United States District Court for the District of Columbia in United States v. Wilkerson, D.C.D.C.1967, 262 F.Supp. 596, cert. den. 390 U.S. 1045, 88 S.Ct. 1641, 20 L.Ed.2d 308, citing the above language with approval at pages 597–598.

These cases are of special significance in that they came out of the District of Columbia, the same district in which the Kent case originated and where the meaning and effect of the Supreme Court Kent decision was clear, unambiguous and directly applicable. The judges in the Mordecai and Wilkerson cases were asked not only to apply Kent retroactively but also the decision of their own circuit in Black v. United States, 1965, 122 U.S.App.D.C. 393, 355 F.2d 104, a decision heavily relied upon by the Supreme Court in reaching the conclusion that it did in Kent. Both Judge Youngdahl and Judge Gasch refused to give retroactive application to Black and Kent after clear and careful analysis of the question before them.

Finally turning to the other criteria relied upon by the Supreme Court in the Johnson case for aid in determining whether a rule should be given retrospective or prospective effect, the case can not be better stated than it was by the Court of Special Appeals of Maryland. "Conscious of the integrity of juvenile procedures as have been followed in this State,[1] aware of the reliance on

1. The Court of Appeals of Maryland has not been niggardly in requiring procedural safeguards in juvenile proceedings. For a pre-Kent, pre-Gault decision of the Maryland court recognizing that "[i]f, as some authorities suggest and our own Rules reflect, juvenile proceedings should

be conducted without strict regard for the usual court rules, we think there is at least a minimum standard of fairness that must be observed" see In Matter of Cromwell, 1963, 232 Md. 409, 194 A.2d 88.

pre-*Gault* rules in juvenile proceedings [wherein it was not the practice to appoint counsel for indigent juveniles at waiver proceedings] and recognizing the necessity to avoid a disruptive effect on the administration of justice, we hold that the rulings in *Gault*, with respect to waiver of jurisdiction proceedings, shall apply, assuming they do apply, only to cases in which a hearing for determination of waiver in the court having jurisdiction to waive, first began after May 15, 1967." (Hammer v. State, supra, 3 Md.App. 96, 99, 238 A.2d 567, 569).

Accordingly, petitioner's instant application for the issuance of a writ of habeas corpus is hereby denied.

Leave to file in forma pauperis has heretofore been granted.