## Commonwealth *v.* James, Appellant.

206

Argued January 8, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

David Kairys, Assistant Defender, with him Melvin Dildine, Assistant Defender, and Vincent J. Ziccardi, Defender, for appellant.

James D. Crawford, Assistant District Attorney, with him Richard Max Bockol, Assistant District Attorney, Richard A. Sprague, First Assistant District Attorney, and Arlen Specter, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1970:

On June 1, 1954, the appellant, Isaac James, in the presence of and upon the advice of legal counsel entered a general plea of guilty to an indictment charging him with murder in the then Court of Oyer and Terminer and General Jail Delivery of Philadelphia County. The plea was accepted by a three-judge court, which then conducted an evidentiary hearing and adjudged James guilty of murder in the first degree. He was sentenced to imprisonment for life. No appeal was entered from the judgment.

In 1968, James instituted post-conviction relief proceedings under the Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq. (Supp. 1970) challenging the validity of his 1954 conviction and sentence. Following an evidentiary hearing, relief was denied and this appealed filed.

James was taken into police custody following the fatal stabbing of Harold Holmes after dissension arose between them from an incident in a basketball game played in a neighborhood public school yard. James was fifteen years of age at the time. Subsequent to his arrest, he was taken without counsel before a judge sitting in the Juvenile Court Division of the Municipal

Court (now Court of Common Pleas, Family Division), who certified the case over to the district attorney for prosecution. These proceedings were not stenographically reported, or at least no record thereof is now available.

The Act of June 2, 1933, P. L. 1433, §18, 11 P.S. 260, provides that where a child, being above the age of fourteen years, has been held for any offense, *other than murder,* punishable by imprisonment in a state penitentiary, a judge in the juvenile court having jurisdiction may certify the case to the district attorney for prosecution the same as if jurisdiction of the juvenile court had never attached, "if, in his opinion, the interests of the State require a prosecution of such case on an indictment." In *Gaskins Case,* 430 Pa. 298, 244 A. 2d 662 (1968), we held that while the juvenile court has jurisdiction to determine delinquency, no matter what crime serves as the basis therefor, this does not oust the jurisdiction of the court of oyer and terminer over murder cases. If, at the hearing in the juvenile court, a prima facie case of murder is made out against a juvenile, then the court must hold the accused for prosecution in the court of oyer and terminer, subject, however, to the right of that court to return jurisdiction of the case to the juvenile court if it is determined such is in the best interests of the child and society.

James now maintains the hearing in the Juvenile Court and the certification of the case to the Court of Oyer and Terminer violated due process, and therefore his subsequent plea of guilty and judgment of sentence must be invalidated. Lack of due process is alleged for the following reasons: (1) absence of counsel for James at the hearing; (2) unavailability of a transcript of the proceedings; (3) the hearing court abused its discretion in certifying the case; (4) the ruling in *Gaskins,* supra, violates the Fourteenth Amendment to the United States Constitution in that there is no reasonable basis

for treating juveniles accused of murder differently than those accused of less serious crimes.

A minute study of the record discloses that Questions Nos. 2, 3 and 4, supra, were never raised in the court below,[1] and hence, may not be raised for the first time on appeal. *Commonwealh v. Payton,* 431 Pa. 105, 244 A. 2d 644 (1968).

As to the contention that due process was violated by the absence of counsel at the certification hearing, there is no doubt but that the United States Supreme Court recently ruled that the assistance of counsel at such a hearing is constitutionally mandated. See *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999 (1970). See also, *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045 (1966). But we are not persuaded that this ruling applies retroactively. See and compare, *Mordecai v. United States,* 421 F. 2d 1133 (D.C. Cir. 1969), *cert. denied* 397 U.S. 977, 90 S. Ct. 1098 (1970) ; *Brown v. New Jersey,* 395 F. 2d 917 (3d Cir. 1968) ; *Kemplen v. Maryland,* 295 F. Supp. 8 (D. Md. 1969) ; *People v. Terpening,* 16 Mich. App. 104, 167 N.W. 2d 899 (1969) ; *State v. Johnson,* 5 N.C. App. 469, 168 S.E. 2d 709 (1969) ; *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A. 2d 923 (1969) ; *Commonwealth v. Willman,* 434 Pa. 489, 255 A. 2d 534 (1969).

The certification hearing concerned not a determination of delinquency, but merely a waiver of jurisdiction. The fundamental fairness, truth and accuracy of the subsequent guilt-determining process was not affected by the lack of counsel at this hearing.

Nor can the denial of counsel at a certification hearing be equated with the denial of such assistance at trial or during proceedings to determine guilt. This

---

[1] The presently asserted issues 2, 3 and 4 were not included in the "PCR" petition or raised in the hearing below. At the hearing, James' counsel detailed his position and specifically enumerated each issue presented for decision. The above were not mentioned.

is quite apparent from the majority opinion in *Coleman v. Alabama,* supra, wherein the Court stated that absence of counsel at a preliminary commitment hearing (similar if not the same as a certification hearing) would if there were an absence of prejudice, constitute harmless error. Certainly, the denial of counsel at trial would never be harmless error. See *Chapman v. California,* 386 U.S. 18, 23 n. 8, 87 S. Ct. 824 (1967).

Finally, it is urged that the guilty plea was involuntary and unknowingly made; the trial court erred in accepting the plea without proper inquiry directed to James personally; and James was denied effective assistance of trial counsel.[2] These issues were correctly resolved by Judge SLOANE in the court below. See *United States ex rel. Grays v. Rundle,* 428 F. 2d 1401 (3d Cir. 1970); *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A. 2d 709 (1970); *Commonwealth v. Savage,* 433 Pa. 96, 249 A. 2d 304 (1969); and *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968).

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent from today's majority decision which misinterprets the United States Supreme Court's recent and controlling pronouncements in *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999 (1970).

---

[2] At the "PCR" hearing, James testified that he saw his attorneys only twice prior to trial and that he was never advised of his right to trial by jury or the significance of a plea of guilty. However, Stephen T. Potok, Esq., who, together with the Hon. Hugh Scott, represented James under appointment of court, testified that he and Mr. Scott saw James at least four times prior to trial, and conducted a two-month investigation of the case with the assistance of an investigator from Scott's office; that, in view of what was learned therefrom, counsel decided a plea of guilty was the best course to follow and so advised James and his mother; and that both agreed with this conclusion.

*Coleman* reversed an Alabama murder conviction because of the lack of counsel at a defendant's "preliminary hearing." The Court found that proceeding to be a "critical stage" in the prosecution at which he was entitled to counsel as a matter of constitutional right. Under Alabama law, the accused was not required to plead or to advance any defenses at his preliminary hearing, and Alabama law prohibited the prosecution's use of anything that occurred at the uncounseled hearing. The Court nevertheless discerned a substantial potential for prejudice flowing from the absence of counsel.

"First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case, that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." 399 U.S. at 9, 90 S. Ct. at 2003.

In the present case appellant was taken without counsel before a judge of the Juvenile Division of the Municipal Court who certified the case over to the district attorney for prosecution. The nature and purpose of this proceeding is characterized by the majority as follows: *"If, at the hearing in the juvenile court, a prima facie case of murder is made out* against a juvenile, then the court must hold the accused for prosecu-

212

tion in the court of oyer and terminer, . . ." (emphasis added). There is no record available of appellant's certification hearing. However, as he *was* certified over for prosecution, we must assume that that hearing revealed a prima facie case of his guilt, i.e., that incriminating evidence of some sort was introduced against him. That necessarily being the case, all of the reasons enumerated in *Coleman* concerning the constitutional requirement of counsel apply to the certification hearing involved here, and it follows that the absence of counsel at that hearing rendered it constitutionally deficient.

Indeed, the majority admits as much, citing *Coleman* and stating that "[a]s to the contention that due process was violated by the absence of counsel at the certification hearing, there is no doubt but that the United States Supreme Court recently ruled that the assistance of counsel at such a hearing is constitutionally mandated." The majority holds, however, that *Coleman* is prospective only. I find this conclusion untenable. The Supreme Court has previously accorded retroactive treatment to the right of representation by counsel at trial, *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963), on appeal, *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963), at sentencing, *Mempa v. Rhay,* 389 U.S. 128, 88 S. Ct. 254 (1967), and at preliminary proceedings in which the rights of an accused might be adversely affected, *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963); *Hamilton v. Alabama,* 368 U.S. 52, 82 S. Ct. 157 (1961). See, respectively, *Doughty v. Maxwell,* 376 U.S. 202, 84 S. Ct. 702 (1964); *Smith v. Crouse,* 378 U.S. 584, 84 S. Ct. 1929 (1964); *McConnell v. Rhay,* 393 U.S. 2, 89 S. Ct. 32 (1968); *Arsenault v. Massachusetts,* 393 U.S. 5, 89 S. Ct. 35 (1968). The decision in *Coleman* was a direct extension of *White v. Maryland,* supra, and *Hamilton v. Alabama,* supra. Inasmuch as these two

decisions were held retroactive, I fail to understand how the majority can suggest a different treatment for *Coleman.*

Accordingly, I would remand appellant's case, as was done in *Coleman,* for a determination whether the unconstitutional certification hearing was harmless error. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967). However, as appellant's conviction rests upon his plea of guilty, the only question to be determined upon remand would be whether the invalid hearing rendered his guilty plea either unintelligent or involuntary.