342 A.2d 101
**COMMONWEALTH of Pennsylvania**
v.
**William Jeffrey PYLE, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1974.

Decided July 7, 1975.

614

Michael B. Kean, West Chester, for appellant.

Robert S. Gawthrop, III, Asst. Dist. Atty., West Chester, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant, William Jeffrey Pyle, seventeen years of age, was arrested for the shooting death of his father, William M. Pyle, on July 25, 1973. Following his arrest on the charge of criminal homicide, appellant petitioned the Chester County Common Pleas Court to transfer the matter to Juvenile Court for further action pursuant to the provisions of the Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 7, 11 P.S. § 50–303 (Supp. 1974–75). Thereafter, on August 15, 1973, a rule was entered upon the Chester County District Attorney, to show cause why the charge should not be transferred. At that time the Commonwealth announced the filing of a juvenile charge of theft against appellant [1] and petitioned the court to transfer this latter charge for adult criminal prosecution, pursuant to the Juvenile Act, id. § 28, 11 P.S. § 50–325. After a full counseled hearing, the lower court discharged the rule and granted the Commonwealth's application for transfer.[2] Thereafter, proceeding in the Criminal Division of the Common Pleas Court, appellant pled guilty to both charges. Appellant's degree of guilt was subsequently fixed at murder in the second degree and following the gathering and review of

1. Appellant was accused of unlawfully taking the alleged murder weapon (a .45 caliber pistol) from a neighbor's home prior to the killing.

2. It was stipulated after the hearing that although the hearing on the appellant's rule was held pursuant to Section 7 of the Juvenile Act, the disposition would apply equally to the issue of transfer on the theft charge.

comprehensive pre-sentencing reports, appellant was sentenced to pay a fine of five hundred dollars ($500.00) and to serve a term of not less than six (6) nor more than sixteen (16) years at an institution to be designated by state authorities. On the related charge of theft, he was sentenced to pay a fine of one hundred dollars ($100.00).[3]

In this appeal, appellant argues that the lower court erred in determining that there were reasonable grounds to believe he was not amenable to treatment, supervision or rehabilitation within the juvenile court system. (*See* Juvenile Act, id. § 28, 11 P.S. § 50–325(a) (4)(i)). Accordingly, he contends that disposition of his case should have been made in the Juvenile Court.[4] We disagree.

This is the first case to be appealed to this Court involving the new criminal transfer section, Section 7, of the Juvenile Act. This section provides:

"§ 50–303. Criminal proceedings; transfer

If it appears to the court in a criminal proceeding other than murder, that the defendant is a child, this

---

**3.** Appellant's judgment of sentence on the homicide charge was appealed directly to this Court. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1). The appeal from the judgment of sentence on the theft charge was certified to this Court by order of the Superior Court on June 19, 1974. Act of July 31, 1970, P.L. 673, No. 223, Art. V, § 503, 17 P.S. § 211.503.

**4.** Absent unusual circumstances, a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. *Commonwealth ex rel. Bostic v. Cavell,* 424 Pa. 573, 576, 227 A.2d 662, 664 (1967); *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 341 n. 2, 223 A.2d 699, 701 n. 2 (1966). However, since one of the prime purposes of the Juvenile Act is to spare from adult punishment certain youths whose behavior would necessarily render them *guilty* of adult crimes (including in some instances, the crime of murder) and since the decision to, or not to transfer is interlocutory—11 P.S. 50–325(f)—and thus only appealable after sentencing (*see Commonwealth v. Ray,* 448 Pa. 307, 292 A.2d 410 (1972); *Commonwealth v. Lockhart,* 220 Pa.Super. 421, 289 A.2d 248 (1972)) we find the instant challenge to be properly preserved.

act shall immediately become applicable, and the judge shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the Family Court Division or to a judge of the court assigned to conduct juvenile hearings, together with a copy of the accusatory pleading and other papers, documents, and transcripts of testimony relating to the case. If it appears to the court in a criminal proceeding *charging murder*, that the defendant is a child, the case *may* similarly be transferred and the provisions of this act applied. . . ." (Emphasis added).

Under the former Juvenile Court Law, Act of June 2, 1933, P.L. 1433, as amended, 11 P.S. §§ 243–268, there was *no* allowance for transfer in cases of murder. Once a prima facie case of felonious homicide was made out, the lower court judge had no alternative but to hold the juvenile for further proceedings in the criminal courts. *Gaskins Case*, 430 Pa. 298, 244 A.2d 662 (1968). *See also Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254 (1973); *Commonwealth v. James*, 440 Pa. 205, 269 A.2d 898 (1970); *Commonwealth v. Moore*, 440 Pa. 86, 270 A.2d 200 (1970); *Commonwealth v. McIntyre*, 435 Pa. 96, 254 A.2d 639 (1969). Now, under the new statute, the determination of whether the interests of state and society require prosecution of murder on an indictment is within *the sound discretion* of the Common Pleas Court. Compare Act of June 2, 1933 P.L. 1433, amendments of June 15, 1939, P.L. 394, 11 P.S. § 256; *Commonwealth v. Pouls*, 198 Pa.Super. 595, 182 A.2d 261 (1962); *Commonwealth ex rel. Firmstone v. Myers*, 184 Pa.Super. 1, 132 A.2d 707, cert. den. 355 U.S. 962, 78 S. Ct. 550, 2 L.Ed.2d 537 (1957); *Trignani's Case*, 150 Pa. Super. 491, 28 A.2d 702 (1942).

Where murder is charged, treatment as a "youthful offender" still does not arise as a matter of right. Nevertheless, the fact that the legislature has widened the avenue for juvenile treatment indicates a belief that there

will be instances where the young offender's need for care, guidance and control *as a juvenile* outweighs the state and society's need to apply legal restraint and discipline *as an adult*. The new Juvenile Act, however, does not specifically address the issue of how the court should proceed and by what standards it should determine when in cases of murder transfer of jurisdiction is warranted.

While noting this lack of guidance, the lower court in the instant case, in an attempt to remain within the framework of the new Act, determined that the appropriate standards and procedure for deciding the question of transfer were those set forth in subsection 28(a) of the Juvenile Act.[5] Although we agree that this subsection informs the parties of the type of criteria that should be considered before any transfer is made, we

5.   Subsection 28(a) provides:

"§ 50–325.   Transfer

(a) After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this State, the court before hearing the petition on its merits may rule that this act is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the trial or criminal division or to a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if:

(1) The child was fourteen or more years of age at the time of the alleged conduct;  and

(2)   A hearing on whether the transfer should be made is held in conformity with this act;  and

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing;  and

(4) The court finds that there is a prima facie case that the child committed the delinquent act alleged, and the court finds that there are reasonable grounds to believe that: (i) the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, in determining this the court may consider age, mental capacity, maturity, previous record and probation or institutional reports;  and (ii) the child is not committable to an institution for the mentally retarded or mentally ill, and (iii) the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult."

find that the strict application of this subsection in cases of murder places an unnecessary burden on the Commonwealth.

Initially, we note that subsection 28(a) by its very language only addresses the issue of transfer where a petition alleging delinquency has been filed [6] and certification to the criminal court is thereafter requested. Nowhere in either Section 7 or Section 28 is there a mandate or even suggestion that the procedures and standards outlined in subsection 28(a) apply when a Section 7 certification to the juvenile court is requested. Nevertheless, since subsection 28(a) is the *only* expression of legislative intent directed to the transfer question and since like purposes are served by a subsection 28(a) transfer and retention of jurisdiction under Section 7, we believe consideration of Section 28(a) is necessary here.

As one commentator recently noted, subsection 28(a) contains a codification of those requirements outlined by the United States Supreme Court in the landmark decision of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).[7] In *Kent,* the Supreme Court reviewed the special rights and immunities conferred on the juvenile in a juvenile adjudicatory proceeding,[8] and concluded that in view of the important

6. Such a petition was not filed here, nor could it have been since the Juvenile Act clearly states a " 'delinquent act' shall not include the crime of murder" 11 P.S. § 50–102. *See also* 11 P.S. § 50–325(d) & (e).

7. Comment, Proposed Pennsylvania Juvenile Act, 75 Dickinson Rev. 235 (1970).

8. In *Kent,* the United States Supreme Court considered the District of Columbia Code §§ 11–907, 11–915, 11–927 and 11–929 (1961) [now §§ 11–1551, 16–2307, 16–2308, 16–2313, 11–1586 (Supp. IV 1965)]. Since the Pennsylvania Statute governing juvenile proceedings confers similar privileges to juveniles, the language in *Kent* is equally applicable here. *United States ex rel. Turner v. Rundle,* 438 F.2d 839 (3rd Cir. 1971); *Commonwealth ex rel. Savage v. Russell,* 41 Pa.D & C 553 (C.P.Phila.1966).

procedures and benefits conferred,[9] the decision whether to criminally prosecute the juvenile in the adult court is a "critically important" one. 383 U.S. at 560, 86 S.Ct. 1045. Consequently, in order to try in a criminal court any person who might qualify as a juvenile, the waiver into such criminal court must be in a manner conforming to due process of law.[11]

Although the *Kent* decision and subsection 28(a) involve the "waiver of the original and exclusive jurisdiction of the juvenile court," we believe an adult criminal court, when dealing with a person who might *potentially* qualify for treatment as a juvenile, must follow the same due process requirements. The privileges of juvenile jurisdiction, although not conferred in the first instance, are potentially as important to the youth accused of murder as the youth accused of delinquency. Assuming there are those who would initially be within the jurisdiction of the criminal court and who would be deserving of transfer, the only way to insure that such juveniles are not *arbitrarily* denied access to juvenile treatment is to insist that they be given the same procedural rights.

9. In particular, the juvenile is "shielded from publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age. The court is admonished by the statute to give preference to retaining the child in the custody of his parents 'unless his welfare and the safety and protection of the public can not be adequately safeguarded without . . . removal.' The child is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment." 383 U.S. at 557, 86 S.Ct. at 1055.

11. In particular, before determining whether to transfer a juvenile, the youth is entitled to notice of the charges against him, to a counseled hearing where he may present evidence and cross-examine witnesses, access to social records and probation or similar reports, and a statement of reasons for the court's determination. 383 U.S. at 557, 86 S.Ct. 1045. *See also United States ex rel. Turner v. Rundle*, 438 F.2d 839, 842 (3rd Cir. 1971).

■ In the instant case, appellant received the necessary procedural safeguards. However, the court went one step beyond guaranteeing a "fair hearing" when it required that a full subsection 28(a) determination be made. Once finding a prima facie case of murder, it was not necessary to make the "negative inquiry" found in subsection 28(a)(4). By placing the questions in such a posture, the lower court incorrectly assumed, that in every case where a transfer is requested, the Commonwealth has the burden of disproving that the juvenile court is entitled to jurisdiction over the juvenile.[12]

■ Murder had always been excluded from the jurisdiction of the juvenile courts. *See* Act of July 12, 1913, P.L. 711, § 11, as amended, 17 P.S. § 694, *Gaskins Case,* 430 Pa. 298, 244 A.2d 662 (1968). *See also Mont. Appeal,* 175 Pa.Super. 150, 103 A.2d 460 (1954). Having continued to place murder, even where a young offender is involved, within the original and exclusive jurisdiction of the adult court, the assumption that the need for adult discipline and legal restraint exists in cases of this heinous nature also continues. With this in mind it becomes the juvenile's burden to show that he does not belong in the criminal court.[13] In other words, it is the youth who must prove that he belongs in the juvenile set-

12. In cases of delinquency, since the juvenile court is given exclusive jurisdiction in the first instance, it necessarily follows that the Commonwealth must show that the juvenile is *not* the proper subject for the care and solicitude of that system. In cases of murder, however, jurisdiction is originally in criminal court. To hold the Commonwealth to the same burden in either case would render the distinctions placed in the new legislation meaningless.

13. The decision to transfer has no bearing on either the procedural or substantive aspects of the criminal conviction in criminal court (*i. e.,* it is still the Commonwealth's burden to prove every fact necessary to constitute murder beyond a reasonable doubt). Consequently, placing the burden on a petitioner in this manner in no way denies him his due process safeguards. Cf. *Commonwealth v. James,* 440 Pa. 205, 209, 269 A.2d 898, 900 (1970); *Holmes' Appeal,* 379 Pa. 599, 109 A.2d 523 (1954) cert. den. 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757 (1955); *Commonwealth v. Frisby,* 54 Pa.D. & C.2d 585, 594 (C.P.Delaware 1972).

ting by showing his *need* and *amenability* to the "program of supervision, care and rehabilitation" which he would receive as a juvenile.[14] In the event the evidence does not affirmatively demonstrate that he is the kind of youth who would benefit from the special features and programs of the juvenile court system and in the event no special reason exists for sparing the youth from adult prosecution and punishment (as for instance, evidence of mental illness or retardation) jurisdiction would necessarily remain within the criminal court system.

In the instant case, the appellant based his transfer request on his need for psychiatric treatment. The evidence presented by appellant tended to corroborate that he was "emotionally unstable," and that his problems were "deep-seated" and "capable of producing the most dangerous of consequences." Nevertheless, there was no indication that juvenile facilities would as-

14. Since the Juvenile Act proposes a plan whereby a juvenile may be "treated not as a criminal, or legally charged with a crime, but as a ward of the state to receive practically the care, custody and discipline that are accorded the neglected and dependent child and which, as the Act states, shall approximate as nearly as possible the treatment that a wise parent would give his own child" (Report of Chicago Bar Association (1899), cited in Pennsylvania B. Ass'n. Q. 40, 47 (1968). *See also* 11 P.S. § 50–101(b)(3)), it follows that the child's need for and ability to respond to such treatment lies at the heart of any determination to apply the mandates of the Juvenile Act.

However, the determinative factors in deciding whether the youth is amenable to juvenile treatment will differ from case to case. Such determination should be made after careful review of the individual child's *personal* make-up (*e. g.*, mental capacity and maturity as determined by consideration of his home and school environmental situation, emotional attitude, and pattern of living) his previous history (including any previous contact with law enforcement agencies and/or juvenile courts) and the nature and circumstances of the alleged homicide (*e. g.*, inquiry into whether the killing was committed in an aggressive, violent or willful manner, whether the safety of the community requires lengthy incarceration, whether it is more desirable to dispose of the entire offense in one court should the juvenile's associates in the alleged homicide be adults not within juvenile jurisdiction). *See Kent v. United States,* 383. U.S. at 565–8, 86 S.Ct. 1045, appendix to opinion, and criteria listed in Section 28(a)(4)(i).

sure rehabilitation commensurate with the serious nature of appellant's problem within the time limitations available to such facilities.[15] The only evidence on this issue came from appellant's own expert, who indicated there was a likelihood it would be necessary to continue treatment beyond appellant's minority and that a successful result would not be accomplished within three years. It was on this basis, that the lower court concluded there were reasonable grounds to believe appellant was not amenable to treatment supervision or rehabilitation as a juvenile within existing juvenile facilities.[16]

We are convinced the appellant did not show he was amenable to treatment as a juvenile. Since no other reason was given in favor of certification to the juvenile court and, since the "non-amenability" found by the hearing judge was supported by the evidence, we do not find an abuse of discretion. *Accord Commonwealth. v. Pouls,* 198 Pa.Super. 595, 182 A.2d 261 (1962); *Ciammaichella Appeal,* 169 Pa.Super. 240, 82 A.2d 560 (1951) affirmed 369 Pa. 278, 85 A.2d 406 (1952); *In re Weintraub,* 166 Pa.Super. 342, 71 A.2d 823 (1950). Accordingly, we find that based on the record presented below, the decision to proceed in criminal court was warranted.

Judgment of sentence affirmed.

EAGEN, J., concurs in the result.

15. An initial commitment under the Juvenile Act may not be for a period longer than three years. 11 P.S. § 50–323. Further, upon attaining his majority, the appellant would no longer be a "child" under the Act and thus would not be subject to its jurisdiction. 11 P.S. § 50–102.

16. The lower court did not suggest that appellant not receive any treatment for his problems. In fact, at Camp Hill (the penal facility the sentencing judge recommended and where appellant is presently incarcerated) those adjudged delinquent and those convicted of crime receive *identical* treatment. *See Wilson Appeal,* 214 Pa.Super. 160, 168, 251 A.2d 671, 675 (1969) (Hoffman, J., dissenting).