STATE of Iowa, Appellee,

v.

Mario T. TERRY, Appellant.

No. 96–1123.

Supreme Court of Iowa.

Sept. 17, 1997.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, William E. Davis, County Attorney, and Michael Walton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

The defendant, Mario Terry, appeals from his convictions and sentences for attempted murder and first-degree burglary. Terry appeals on two grounds. First, the district court erred in placing the burden of proof on him to prove good cause necessary to transfer jurisdiction of his case to the juvenile court. *See* Iowa Code § 232.8(1)(c) (Supp. 1995). Second, his confession was obtained in violation of his statutory right to counsel and was therefore improperly admitted at trial. *See* Iowa Code § 232.11 (1995). We find the first claim without merit and the second claim not properly preserved for our review. We affirm.

## I. *Background Facts.*

Harold Mitchell was the target of the alleged attempted murder and burglary in this case. Mitchell is the stepfather of fifteen-year-old Jessica Springsteen. Mario Terry, a sixteen-year-old juvenile, was Springsteen's boyfriend.

According to statements the police obtained through interrogation of the juveniles, Terry and Springsteen plotted to either "beat up" or "kill" Mitchell. The planned assault apparently was motivated in part by Mitchell's disapproval of Springsteen's relationship with Terry and Mitchell's banning Terry from the household.

On November 16, 1995, Terry, Springsteen, and a third juvenile—Thomas Hull—arrived at the Mitchell home around 7 p.m. Springsteen knocked on the door and asked to enter. Mitchell told Springsteen she could come in if she left her friends outside. Springsteen said she wanted to speak with Terry first. Mitchell then shut the door. At the time, Mitchell and his five-year-old son

were at the kitchen table working on a car model.

Several minutes later, Springsteen opened the door and entered the home with Hull and Terry. All were armed: Springsteen with a martial arts weapon; Hull with a baseball bat; and Terry with a crowbar. The juveniles then confronted and attacked Mitchell, who was able to fend them off and flee to an upstairs bedroom with his son. The juveniles left the home and were later arrested by the police. Mitchell suffered minor injuries from blows to his back inflicted by Terry either by fists or the crowbar.

## II. *Background Proceedings.*

Later, the State charged Terry in three counts: (1) attempted murder, (2) first-degree burglary, and (3) conspiracy. *See* Iowa Code §§ 707.11, 713.3, 706.4.

Two pretrial proceedings are relevant to this appeal.

Terry moved to suppress his confession to a police interrogator. Following an evidentiary hearing, the district court, Judge Edward B. de Silva, Jr., overruled the motion.

Terry also moved to transfer his case to the juvenile court pursuant to Iowa Code section 232.8(1)(c) (Supp.1995). The motion came before the district court, Judge C.H. Pelton. The parties presented arguments regarding the burden of proof. Judge Pelton ruled that the burden was on Terry to prove good cause to transfer the case to the juvenile court. A hearing on the merits of the transfer motion was rescheduled.

Following a hearing on the merits of the transfer motion, the district court, Judge Bobbi M. Alpers, denied the motion.

A jury found Terry guilty on all three charges.

The district court, Judge James E. Kelley, sentenced Terry to concurrent, indeterminate twenty-five-year terms of incarceration on the attempted murder and burglary convictions. *See* Iowa Code §§ 707.11, 713.3, 902.3, 902.9(1). The court did not enter judgment and sentence on the conspiracy conviction. *See id.* § 706.4 (prohibiting sentence

and conviction for both conspiracy and the underlying public offense).

### III. Burden of Proof in Reverse Waiver Proceedings Under Iowa Code Section 232.8(1)(c).

A. Applicable law. Iowa Code section 232.8(1)(c) provides:

Violations by a child, age sixteen or older, which subject the child to the provisions of section 124.401, subsection 1, paragraph "e" or "f," or violations of section 723A.2 which involve a violation of chapter 724, or violation of chapter 724 which constitutes a felony, or violations which constitute a forcible felony are excluded from the jurisdiction of the juvenile court and shall be prosecuted as otherwise provided by law *unless the court transfers jurisdiction of the child to the juvenile court upon motion and for good cause.*

Iowa Code § 232.8(1)(c) (Supp.1995) (emphasis added).

As Terry points out, this provision is a change in the law that exempts certain classes of alleged juvenile offenders from the initial jurisdiction of the juvenile court. The emphasized language, however, does allow the district court to transfer a juvenile within the exempted class to juvenile court jurisdiction when "good cause" warrants the transfer.

The new procedure is commonly referred to as "reverse waiver" because it operates in the opposite or reverse manner from the process usually applicable with juvenile offenders. Generally, juvenile offenders are first subject to the jurisdiction of the juvenile court; they are then subject to being transferred to district court jurisdiction for prosecution as an adult. See id. §§ 232.8(3) (Supp. 1995), 232.45 (1995). Under section 232.8(1)(c), the "reverse" procedure applies: the qualifying juvenile begins in district court for prosecution as an adult and is then subject to transfer to juvenile court.

■ Terry was subject to the initial, direct jurisdiction of the district court for prosecution as an adult for two reasons. First, he was sixteen at the time of the alleged incident. Second, two of his charges—attempt-

ed murder and first-degree burglary—are forcible felonies. Iowa Code section 702.11 classifies first-degree burglary as a forcible felony. Attempted murder—although not specifically listed as a forcible felony—qualifies as a forcible felony because it is a felonious assault, and felonious assaults are by definition forcible felonies. See id. § 702.11; *State v. Powers,* 278 N.W.2d 26, 29 (Iowa 1979) (holding attempt to commit murder is a felonious assault and therefore a forcible felony).

■ B. The merits. Terry contends the district court erred in placing the burden on him to prove good cause for the transfer of the case to the juvenile court. He points out that for transfer of jurisdiction motions Iowa Code section 232.45(6)(c) expressly imposes on the State the burden to prove that the juvenile should be prosecuted as an adult. In contrast, section 232.8(1)(c) is silent on who has the burden of proof as to "good cause" to transfer jurisdiction to the juvenile court. In the absence of clear legislative intent to the contrary, Terry thinks the burden of proof under section 232.8(1)(c) should remain with the State.

Terry puts forth policy and fairness arguments to support his position. He asserts the policy behind the allocation of the burden of proof under section 232.8(1)(c) is identical to the policy behind such allocation under section 232.45(6)(c): to minimize the risk of mistake, miscalculation, and misjudgment when youthful offenders are involved. Further, in fairness, the State with its awesome power to determine the fate of the accused is not harmed by bearing the burden of proof on the transfer question.

■ Because Terry raises an issue of statutory interpretation, our review is for errors at law. *State v. Johnson,* 528 N.W.2d 638, 640 (Iowa 1995).

■ In interpreting statutes, we strive to determine and give effect to legislative intent. *Id.* In enacting section 232.8(1)(c), we think the legislature intended to place the burden of proof on the juvenile to show good cause for a reverse waiver. The legislature certainly knew what to say when it intended to place the burden on the State in waiver

proceedings. For example, for waiver of jurisdiction to the district court, section 232.45(6)(c) expressly requires the State to "establish[ ] that there are not reasonable prospects for rehabilitating the child...." Because the legislature did not use similar language in the reverse waiver procedure of section 232.8(1)(c), we can assume the legislature did not intend to place that burden on the State.

■ Our assumption follows black letter law when a statute is silent on the allocation of burden of proof: a party making a motion ordinarily has the burden to support it. *In re Matzen*, 305 N.W.2d 479, 481 (Iowa 1981). In *Matzen* the juvenile moved to suspend delinquency proceedings and that she be placed on probation pursuant to Iowa Code section 232.46(1). *Id.* at 480. Section 232.46(1) pertinently provides that

> [a]t any time after the filing of a petition and prior to entry of an order of adjudication ... the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court.

Iowa Code § 232.46(1).

In placing the burden on the juvenile to show the appropriateness of the proposed consent decree, this court in *Matzen* said:

> We are convinced the burden is on the juvenile to show the appropriateness of his or her proposed consent decree. She made the motion. It is hornbook law that ordinarily the burden rests on the movant to support his or her motion. 60 C.J.S. *Motions and Orders* § 37(5) (1969); *cf.* Iowa R.App. P. 14(f)(5) ("Ordinarily the burden of proof on an issue is upon the party who would suffer loss if the issue were not established.").

*Matzen*, 305 N.W.2d at 481.

Several courts with reverse waiver statutes have reached the same conclusion. For example, in *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), the court said:

> Murder has always been excluded [by statute] from the jurisdiction of the juvenile courts. Having continued to place murder, even where a young offender is

involved, within the original and exclusive jurisdiction of the adult court, the assumption that the need for adult discipline and legal restraint exists in cases of this heinous nature also continues. With this in mind it becomes the juvenile's burden to show that he does not belong in the criminal court. In other words, it is the youth who must prove that he belongs in the juvenile setting by showing his need and amenability to the "program of supervision, care and rehabilitation" which he would receive as a juvenile. In the event the evidence does not affirmatively demonstrate that he is the kind of youth who would benefit from the special features and programs of the juvenile court system and in the event no special reason exists for sparing the youth from adult prosecution and punishment (as for instance, evidence of mental illness or retardation) jurisdiction would necessarily remain within the criminal court system.

*Pyle*, 342 A.2d at 106 (citations omitted); *see also State v. Anderson*, 385 A.2d 738, 740 (Del.Super.Ct.1978) ("Since a juvenile with a designated felony [first-degree murder, rape, or kidnaping] in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is a presumption that a need exists for adult discipline and legal restraint. Hence, the burden is on the juvenile to demonstrate the contrary.").

We can say the same thing about our statute. Having placed certain designated crimes committed by juveniles who have reached the age of sixteen within the criminal court jurisdiction, the legislature presumably thought the need for adult discipline and legal restraint was necessary in these cases. In these circumstances, we can safely say the burden of proof is on the juvenile to show he or she does not belong in the criminal court.

The district court correctly ruled that Terry had the burden to prove good cause to transfer his case to juvenile court.

## IV. Admission of Confession.

In a videotaped interview, Terry admitted to the police his participation in the first-

degree burglary and attempted murder. Before the interview, the police obtained a written waiver of Terry's statutory right to counsel under Iowa Code section 232.11. Terry filed a motion to suppress the evidence the police obtained in the interview. In the motion, Terry claimed the police did not make a good-faith effort to contact his mother before the interview as section 232.11(2) requires. *See* Iowa Code § 232.11(2) ("The waiver [of the right to be represented by counsel] by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent ... that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent ... to visit and confer with the child.").

The district court overruled the motion. Terry contends the ruling was erroneous because the evidence is clear that the police did not fulfill their statutory notification duties before interrogating him.

We agree with the State that Terry waived this claim because he failed to file his suppression motion in a timely manner. In addition, Terry's trial counsel affirmatively consented to the admission of the evidence Terry now claims was erroneously admitted.

■ A. *Failure to file the motion in a timely manner.* The arraignment order provided that pretrial motions should be filed in accordance with the requirements of Iowa Rule of Criminal Procedure 10(4). According to Rule 10(4), such motions must be filed "no later than forty days after arraignment." Motions to suppress are subject to this time limitation. *See* Iowa R.Crim. P. 10(2)(c); 10(4). Failure to file a pretrial motion within the time limitation constitutes a waiver of the grounds forming the basis for the motion, unless the court "for good cause shown" excuses the untimely filing. *See* Iowa R.Crim. P. 10(3).

■ Terry filed the suppression motion fifty-seven days after his arraignment. The motion was late and Terry made no effort to show good cause to excuse the untimely filing. For these reasons the motion was waived. *State v. Hrbek,* 336 N.W.2d 431, 435

(Iowa 1983); *State v. Beeman,* 315 N.W.2d 770, 778–79 (Iowa 1982); *State v. McCowen,* 297 N.W.2d 226, 227–28 (Iowa 1980). Even though the State did not resist the motion in the district court as untimely and unexcused for good cause, we will uphold the ruling on the admissibility of the evidence on this or any other ground appearing in the record, whether urged or not. *McCowen,* 297 N.W.2d at 227.

■ B. *Consent to admission of evidence.* Regarding the admission of the challenged evidence, the record shows the following during the State's questioning of the detective who interviewed Terry:

Q. I'm going to show you what's been marked as State's exhibit No. 5 for purposes of identification. Do you recognize what that is? A. That's the videotape of the interview with Mario Terry.

Q. Have you had a chance to review State's exhibit No. 5? A. Yes, I have.

Q. Does it accurately depict your conversation with Mr. Terry? A. Yes, it does.

Q. Does it contain your whole conversation with Mr. Terry? A. Yes, it does.

PROSECUTOR: Your Honor, at this time I would move to admit State's exhibit No. 5.

DEFENSE COUNSEL: No objection.

THE COURT: No. 5 is received into evidence.

. . . .

PROSECUTOR: I would ask you to play it for the jury, Your Honor.

DEFENSE COUNSEL: No objection.

A similar scenario faced this court in *State v. Schmidt,* 312 N.W.2d 517 (Iowa 1981), an OWI case. There, the defendant pro se moved prior to trial to suppress a breath test and a videotaped statement taken from him as inadmissible under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Schmidt,* 312 N.W.2d at 517–18. The district court ruled the evidence admissible. *Id.* at 518. At trial, when the State was questioning the officer who gave the breath

test, defense counsel objected that "any further evidence would violate the defendant's right to counsel." *Id.* The district court noted the matter had already been ruled on and overruled the objection. *Id.* Later, when the State offered the results of the breath test, defense counsel made this statement: "I have no objection to the introduction of this evidence." *Id.* Still later, when the State offered the videotape, defense counsel replied: "I have no objections, Your Honor." *Id.* Following this, the State showed the tape to the jury. *Id.*

This court responded:

> This presents a baffling situation as far as preservation of error is concerned. Counsel both objected and consented to the damaging evidence. Defendant cannot have it both ways. He cannot both object and consent to evidence if he expects to preserve error for appeal. It is true an objection, once made and overruled, need not be asserted repeatedly to the same type of evidence. But that is not the case here. Here counsel did not simply remain silent and rely on the questionable objection already made. He affirmatively stated—*twice*—that he had no objection to the very evidence whose admission he now says amounted to reversible error.... On the record before us we hold defendant waived his objection to admission of the results of the breath test and the video tape recording.

*Id.* (citations omitted).

Likewise here, Terry's counsel moved to suppress his confession before trial. Later at trial, counsel expressly stated he had no objection to the challenged evidence. In these circumstances, Terry waived his objection to the admission of the confession.

 Terry attempts to save the issue regarding his confession's admission via the ineffective-assistance-of-counsel route in his reply brief. His attempt comes too late. We do not consider matters raised for the first time in a reply brief. *State v. Willet,* 305 N.W.2d 454, 458 (Iowa 1981) (holding that this court would not consider double jeopardy argument raised for first time in reply brief).

V. *Disposition.*

Because Terry has shown no reversible error, we affirm.

**AFFIRMED.**