J-A06028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON REED | : | |
| | : | |
| Appellant | : | No. 1197 WDA 2020 |

Appeal from the Judgment of Sentence Entered October 28, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0004939-2019

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED:  June 3, 2022**

Aaron Reed appeals from the judgment of sentence imposed following his guilty plea to aggravated assault with a deadly weapon.[1]  We affirm.

In 2019, Reed, then fifteen-years-old, committed an armed robbery with another juvenile.  Reed and his co-conspirator knocked on the door of the victim's residence and were permitted entry by the victim's stepfather, who indicated that the victim was in the basement.  Reed and his co-conspirator proceeded to the basement where they encountered the victim and his girlfriend.  Reed pointed a gun at the victim's chest and demanded marijuana. A struggle with the victim ensued during which Reed's firearm discharged, striking the victim in the abdomen.  Reed and his companion attempted to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2702(a)(4).

flee, but the stepfather locked them in the garage. They escaped by shooting out garage door windows and climbing through them. Police responded to the residence, and the victim identified Reed as the shooter. Police arrested Reed later that evening and he made several incriminating statements. Police also discovered gunshot powder residue on his hands.

Police charged Reed with numerous offenses, including robbery, aggravated assault, and aggravated assault with a deadly weapon. Pursuant to the 1995 amendments ("Act 33") to the Juvenile Act of 1972, 42 Pa.C.S.A. §§ 6301-6375, the charges for robbery and aggravated assault with a deadly weapon vested in the criminal division of the court of common pleas. *See* 42 Pa.C.S.A. §§ 6302 (providing the definition of "Delinquent act" at (2)(ii)(C), (D)). Reed filed a petition to decertify the case to juvenile court pursuant to section 6322(a). Therein, he challenged the constitutionality of Act 33 and claimed that the decertification court should have granted his petition to decertify the charges because he was amenable to treatment through the juvenile justice system.

The decertification court conducted a hearing on the petition. At the hearing, Reed presented the testimony of Carol A. Hughes, M.A., a licensed psychologist, who prepared an expert report in this matter and opined that Reed was amenable to treatment in the juvenile justice system. Hughes indicated that she had interviewed Reed and his family and reviewed Reed's educational records. Hughes noted that Reed suffers from ADHD, self-

- 2 -

medicates with marijuana, and had no criminal record. Hughes further opined that the crimes Reed committed during the armed robbery lacked criminal sophistication. The Commonwealth argued that Reed was not amenable to treatment and presented evidence that, since his release on bail for the armed robbery, Reed engaged in additional violent criminal conduct and was charged with simple assault after he and other juveniles attacked another juvenile. At the conclusion of the hearing, the decertification court denied the petition. Reed filed a motion for reconsideration which the court denied. On October 28, 2020, Reed pleaded guilty to one count of aggravated assault with a deadly weapon pursuant to a negotiated plea agreement.[2] The trial court sentenced him to six years of probation. Reed thereafter filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Reed raises the following issues for our review:

1. Whether the decertification court erred in concluding that Act 33 is not unconstitutional?

2. Whether the decertification court erred in concluding that . . . Reed is not amenable to treatment through the juvenile justice system?

---

[2] Generally, upon entry of a guilty plea, a defendant waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the "legality" of the sentence imposed. *See Commonwealth v. Eisenberg*, 98 A.3d 1268, 1276 (Pa. 2014). However, orders which deny a juvenile's petition to transfer from adult criminal court to juvenile court are "jurisdictional" in the sense that the issue cannot be waived by the juvenile. *See Commonwealth v. Johnson*, 645 A.2d 234 (Pa. Super. 1994).

Reed's Brief at 6.

In his first issue, Reed challenges the constitutionality of Act 33. Reed's constitutional challenge presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa. 2011). Statutes enjoy a strong presumption of constitutionality and a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. ***See Commonwealth v. Cotto***, 753 A.2d 217, 219 (Pa. 2000). Therefore, the party challenging the constitutionality of a statute has a heavy burden of persuasion. ***Id***.

The legislature, through the Juvenile Act, placed the adjudication of a "delinquent act" within the jurisdiction of juvenile court when the defendant is a child. ***See*** 42 Pa.C.S.A. § 6322(a). However, section 6302 of the Juvenile Act excludes robbery and aggravated assault from the definition of a delinquent act when the perpetrator is aged fifteen or older and used a gun during the commission of the crime. ***See id***. § 6302 (providing the definition of "Delinquent act" at (2)(ii)(C), (D)). The prosecution for an offense excluded from the definition of a delinquent act is automatically vested in criminal court rather than in juvenile court. ***See*** 42 Pa.C.S.A. § 6322(a); ***see also Commonwealth v. Ramos***, 920 A.2d 1253, 1258 (Pa. Super. 2007) (holding that "when the crime involved is one excluded from the Juvenile Act's

definition of a delinquent [act], the charge is automatically within the jurisdiction of the criminal court and jurisdiction is presumptively proper").

When a criminal court has jurisdiction over a crime committed by a juvenile pursuant to section 6322(a), the juvenile may request that his or her case be decertified, *i.e.*, removed from criminal court and transferred to the jurisdiction of juvenile court. **See Commonwealth v. Sanders**, 814 A.2d 1248, 1250 (Pa. Super. 2003). This process has been upheld as constitutional by this Court and our Supreme Court. **See Cotto**, 753 A.2d at 222 (holding as constitutional the 1995 Amendments to the Juvenile Act which vest original jurisdiction in the criminal courts for specified violent felonies and granting the decertification court discretion in determining whether to transfer a direct file case to juvenile court); **see also Commonwealth v. Aziz**, 724 A.2d 371, 374 (Pa. Super. 1999) (holding that the 1995 amendments to the Juvenile Act, which require juveniles accused of enumerated felonies to appear first in criminal court, are not arbitrary and instead are rationally related to the statute's objectives).

In the instant matter, Reed contends that Act 33 is unconstitutional. While Reed concedes that **Cotto** and **Aziz** are binding on this Court, he nevertheless claims that since those cases were decided there have been several decisions by the United States Supreme Court recognizing that juvenile offenders are capable of change and rehabilitation and are not to be treated as adults in the criminal justice system, including: **Roper v. Simons**,

543 U.S. 551 (2005) (holding that execution of a juvenile offender violates the prohibition against and cruel unusual punishment); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that juvenile offenders who commit crimes other than murder cannot constitutionally be sentenced to life without the possibility of parole); and *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory life without the possibility of parole sentences for juveniles are unconstitutional). Reed claims the differences between juveniles and adults should also be recognized in the jurisdictional context (*i.e.*, criminal court versus the juvenile justice system).

Reed claims that Act 33 does not achieve its stated purposes, as set forth in section 6301(b)(2):

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

*See* 42 Pa.C.S.A. § 6301(b)(2). Reed asserts that Act 33 does not protect the community because studies have shown that processing juvenile offenders through adult criminal court makes them more likely to reoffend, to reoffend earlier, to commit a higher number of subsequent offenses, and to commit more serious offenses. Reed claims that Act 33 does not hold juveniles accountable for their conduct. He argues that juveniles in adult prisons suffer from higher rates of physical and sexual abuse and suicide than adult inmates,

are more likely to be sexually assaulted and beaten by staff, and attacked with a weapon. Reed claims that, apart from physical harm, juveniles in adult prisons also suffer from mental illness. Reed maintains that juveniles in adult prisons are less able to manage their disabilities, anxieties, fears, losses, and trauma, and are more likely to commit suicide. Reed asserts that Act 33 does not rehabilitate juveniles and claims that juveniles processed through adult criminal court are nearly certain to reoffend.

Reed points out that section 6355 of the Juvenile Act permits the Commonwealth to transfer a charge from juvenile court to criminal court when a juvenile offender is extremely violent or such a chronic offender that he or she is deemed no longer amenable to treatment through the juvenile justice system. Reed claims that this statute places the burden on the Commonwealth to prove that the public interest is served by the transfer of the case from juvenile court to criminal court and that a child is not amenable to treatment, supervision, or rehabilitation as a juvenile. *See* 42 Pa.C.S.A. § 6355(8). Reed maintains that section 6355 was the jurisdictional standard prior to Act 33 and should be restored as that standard.

Finally, Reed asserts that fifteen to seventeen-year-olds are treated as children in many other aspects of their lives; namely, they cannot drink alcohol, vote in elections, serve on juries, enlist in the military, or obtain tattoos. Reed claims that several other states have recognized that juvenile

offenders warrant the same approach in the criminal justice system and have reformed legislation that was similar to Act 33.

The decertification court considered Reed's first issue and concluded that no relief was due. The court explained that *Cotto* and *Aziz* were controlling and required the rejection of Reed's challenge to the constitutionality of Act 33. *See* Trial Court Opinion, 4/29/21, at 7.

We conclude that the trial court correctly determined that *Cotto* and *Aziz* constitute binding precedent and require the rejection of Reed's constitutionality challenge. In *Cotto*, our Supreme Court ruled that Act 33 is not unconstitutionally vague or unconstitutional on the basis that it places the burden on the juvenile to prove that he is amenable to treatment in the juvenile justice system in order to have the case decertified from criminal court to juvenile court. The *Cotto* Court stated:

> Armed robbery . . . is a heinous and serious crime, and the legislature's informed determination that juveniles fifteen years of age and older who commit such offenses are not initially amenable to rehabilitation under the Juvenile Act, unless they prove otherwise by a preponderance of the evidence, is equally reasonable. There is nothing in the Constitution to prevent the legislature from making such a judgment.

*Cotto*, 753 A.2d at 224; *see also Aziz*, 724 A.2d at 373-78 (holding that Act 33's requirement that juveniles accused of enumerated offenses must first appear in adult criminal court, then prove their amenability to treatment in the juvenile system, does not offend due process or equal protection).

The ***Cotto*** Court further observed there is no constitutional guarantee to special treatment for juvenile offenders, and that any right to treatment as a juvenile is derived from statute. ***See Cotto***, 753 A.2d at 223. The ***Cotto*** Court noted that the burden of showing amenability to treatment justifying transfer to juvenile court was first placed on Pennsylvania juveniles not by the legislature, but by the Pennsylvania Supreme Court in ***Commonwealth v. Pyle***, 342 A.2d 101 (Pa. 1975). In ***Pyle***, the Court reasoned that placing the burden on a juvenile petitioner in no way denies him his due process safeguards because it is still the Commonwealth's burden to prove every fact necessary to convict beyond a reasonable doubt. ***See Pyle***, 342 A.2d at 106 n.13.

This Court has a duty and an obligation to follow the decisional law of the Supreme Court of Pennsylvania. ***See Commonwealth v. Shaffer***, 734 A.2d 840, 844 n.6 (Pa. 1999) (emphasizing that "it is a fundamental precept of our judicial system that a lower tribunal may not disregard the standards articulated by a higher court"). Additionally, this panel is not empowered to overrule another panel of the Superior Court. ***See Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013). Because ***Cotto*** and ***Aziz*** considered and resolved the constitutional issues raised in Reed's appeal, we are bound by those holdings. Accordingly, we conclude that Reed's first issue merits no relief.

In his second issue, Reed challenges the denial of his decertification

petition. Our standard of review of an order granting or denying decertification is well-settled:

> Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will.

*Commonwealth v. Ruffin*, 10 A.3d 336, 338 (Pa. Super. 2010) (citations omitted).

As explained above, when a juvenile is charged with a crime which automatically vests in criminal court, the Juvenile Act provides a mechanism for the juvenile to seek decertification of the case to juvenile court. *See* 42 Pa.C.S.A. § 6322(a). The juvenile bears the burden of proving by a preponderance of the evidence that such "transfer will serve the public interest." *Id*. In making this determination, the decertification court must consider the factors set forth in section 6355(a)(4)(iii). *Id*. The section 6355(a)(4)(iii) factors are as follows:

> (iii) . . . In determining whether the public interest can be served, the court shall consider the following factors:
>
> (A)  the impact of the offense on the victim or victims;
>
> (B)  the impact of the offense on the community;
>
> (C)  the threat to the safety of the public or any individual posed by the child;
>
> (D)  the nature and circumstances of the offense allegedly committed by the child;

- 10 -

(E)    the degree of the child's culpability;

(F)    the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal system; and

(G)    whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

Although the Juvenile Act requires the decertification court to consider all of the section 6355 factors, it is silent as to the weight that should be accorded to each factor. *See Commonwealth v. L.P.*, 137 A.3d 629, 636 (Pa. Super. 2016). The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of the decertification court. *Id*. The decertification court need not address the applicability and importance of each factor in reaching its final determination. *Id*.

Furthermore, we presume the court considered the entire record in making its determination, and it is not required to give a detailed explanation justifying its decision. *Id*.

Reed claims that the decertification court abused its discretion in denying his petition. Reed points out that the decertification court stated on the record that the case was "a close one." Reed's Brief at 17 (citing N.T., 1/31/20, at 45-46). However, according to Reed, the sole basis for the decertification court's decision to deny the petition was that Reed had engaged in further criminal activity while on bail for the crimes in question, and that the new criminal charges involved an attack on another juvenile which resulted in a simple assault charge. Reed points out that eighteen days after the decertification hearing, he pleaded guilty to the summary offense of harassment and the simple assault charge was withdrawn.

Reed also claims that, whereas the decertification court initially observed at the hearing that the gun discharged accidentally through a struggle, the court nevertheless indicated in its Rule 1925(a) opinion that Reed "shot" the victim. Reed's Brief at 81 (citing Trial Court Opinion, 4/29/21, at 6). Reed asserts that this finding is not supported by the record and requires that his guilty plea be vacated, and his case transferred to juvenile court.

The decertification court considered Reed's second issue and determined that it lacked merit. The court reasoned as follows:

This court considered all of the evidence offered at the transfer hearing. This court's decision not to transfer [Reed's] case to juvenile court was based on the . . . serious nature of the armed home invasion, its impact on the victim and others in the residence at the time of the home invasion; the impact of the offense on the community; the serious threat to the safety of the public or any individual posed by [Reed]; the nature and circumstances of the offense allegedly committed by [Reed] and the high degree of [his] culpability (based on [his] having been identified as the shooter). While there was evidence presented that [Reed] was amenable to treatment in the juvenile system, this court believes that the factors cited above outweighed the evidence of amenability to treatment.

There is no question that the circumstances of the instant offense [were] serious. Its impact on the victim and the community cannot be overstated. In this court's view, [Reed] entered the residence to rob the victim of marijuana at gun point. The offense was violent. In an effort to steal an illegal controlled substance, [Reed] shot the victim in the abdomen. [Reed] allegedly shot out windows to escape. [Reed] played the central role in the home invasion.

In addition to the circumstances of the offense of conviction, this court also considered the fact that [Reed] engaged in other violent assaultive conduct while on bail in this case. This evidence directly challenged the evidence that [Reed] was amenable to treatment in the juvenile system. This court did not believe that [Reed] took the circumstances of this case seriously. Instead of complying with the conditions of bail, namely not to engage in other criminal conduct, [Reed] ignored those conditions and continued to commit additional violent offenses. This court believes that [Reed] poses a continued threat to the safety of society in general. More importantly, [Reed] would pose a serious threat to other juveniles if he were to remain in the juvenile justice system. Though [Reed] did not have a criminal record, he has been using marijuana since the sixth grade and his criminal conduct has escalated since his arrest for the offense of conviction. The record demonstrates that [Reed] is a threat to the community. Considering all of the relevant factors, this court believes that the public interest would not be served by transferring this case to juvenile court.

Trial Court Opinion, 4/29/21, at 5-6 (unnecessary capitalization omitted).

We discern no gross abuse of discretion by the decertification court. The court indicated that it considered each of the section 6355(a)(4)(iii) factors and ultimately determined that the public interest would not be served by transferring the matter to juvenile court. The decertification court instead determined that Reed should proceed through criminal court. As this Court cannot conclude that the decertification court's determination was a gross abuse of discretion, we affirm its denial of Reed's petition for decertification.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2022