Peter T. DeMarco, M.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Medical Education and Licensure, Respondent.

Argued April 5, 1979, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*F. Emmett Fitzpatrick*, with him *Nicholas Kozay*, for appellant.

*William C. Kennedy*, Assistant Attorney General, with him *Paula F. Garrety*, Assistant Attorney General, and *Gerald R. Gornish*, Attorney General, for appellee.

*James McGirr Kelly*, for amicus curiae, S.O.S. Association, Inc.

OPINION BY JUDGE CRAIG, December 4, 1979:

This petition for review seeks reversal of an adjudication and order of the State Board of Medical Education and Licensure (Pennsylvania board) which revoked petitioner's license to practice medicine in Pennsylvania.

Petitioner had received his Pennsylvania medical license on August 28, 1958. Also licensed in New Jersey, his medical practice was conducted exclusively from an office in that state, but with Pennsylvania as well as New Jersey patients, until August 26, 1976,

at which time the New Jersey State Board of Medical Examiners (New Jersey board) suspended his New Jersey license.

Beginning in January, 1977, petitioner established his office in Morrisville, Pennsylvania and continued to practice. The Pennsylvania board issued to petitioner a citation and notice of hearing based upon (1) alleged noncompliance with the malpractice insurance requirements and (2) the New Jersey suspension. At a hearing in February, 1977, petitioner satisfied the Pennsylvania board that he complied with malpractice insurance requirements, and that board deferred action on the suspension charges until the New Jersey board issued a final order.

The New Jersey board held 27 days of hearings between March 7 and May 3, 1977 and, on January 12, 1978, pursuant to the recommendation of its hearing officer, the New Jersey board revoked petitioner's New Jersey license.[1] One of the causes for the revocation was hepatitis among petitioner's patients, found by the New Jersey board to have resulted from unprofessionally insanitary practices.

The Pennsylvania board then issued an amended citation and notice of hearing based on the New Jersey revocation.

---

[1] Petitioner appealed the final order of the New Jersey board to the Superior Court of New Jersey, Appellate Division, to whom his appeal had been submitted before argument was held before us. Thereafter, in accordance with Pa. R.A.P. 2501(b), we were provided with a copy of a decision of the Superior Court of New Jersey, Appellate Division, *In the Matter of the Suspension or Revocation of the License of Peter T. DeMarco, M.D. to Practice Medicine and Surgery in the State of New Jersey*, N.J. Super. , A.2d (No. A-2321-77, decided July 5, 1979) which has affirmed the revocation order of the New Jersey board. Therefore, any question concerning the pendency of petitioner's appeal before the New Jersey Courts is moot.

The Pennsylvania board's formal hearing was held March 14, 1978, at which evidence of the New Jersey revocation was admitted. The authenticity of the evidence of the New Jersey revocation is not subject to question because the New Jersey documents were authenticated by the presentation of duly certified copies. Act of February 21, 1834, P.L. 68, §1, repealed, Act of April 28, 1978, P.L. 202, No. 53, §2(a), effective June 27, 1978, *formerly* 28 P.S. §91.

Petitioner presented only evidence relating to certain official supervision and monitoring of his practice by the Pennsylvania Department of Health, designed to prevent problems of the sort which had occurred in New Jersey, including the outbreak of hepatitis.

On May 24, 1978, the Pennsylvania board issued its adjudication and revocation order which is the subject of this appeal. The Pennsylvania board based its action upon Section 15(a)(4) of the Medical Practice Act of 1974,[2] 63 P.S. §421.15(a)(4), which reads:

(a) The board shall have authority to refuse, revoke or suspend the license of a physician for any or all of the following reasons:

. . . .

(4) Having his license to practice medicine and surgery revoked or suspended or having other disciplinary action taken, or his application for a license refused, revoked or suspended by the proper licensing authority of another state, territory or country.

The only issue raised by petitioner may be summarized as:

May the Pennsylvania board revoke a physician's license, without hearing any evidence regarding his

---

[2] Act of July 20, 1974, P.L. 551, *as amended.*

practice as a physician in Pennsylvania, solely upon the basis of the revocation of his license in New Jersey for acts which occurred there before he began practice in Pennsylvania?

Our review of the board action of May, 1978 is governed by Section 44 of the previous Administrative Agency Law,[3] *formerly* 71 P.S. §1710.44, then applicable, which, in the same terms as the current provision in 2 Pa. C.S. §704, provided that we shall affirm the adjudication unless it is in violation of constitutional rights, otherwise not in accordance with law, or a necessary finding is not supported by substantial evidence.

The Pennsylvania board, as respondent here, does not dispute petitioner's premise that, with respect to revocation of his professional license, petitioner must be afforded due process, including due notice of the charges and an opportunity to be heard. *See State Board of Medical Education and Licensure v. Grumbles*, 22 Pa. Commonwealth Ct. 74, 347 A.2d 782 (1975).

However, because petitioner has cited no authority whatsoever,[4] we have difficulty in crystallizing the precise nature of petitioner's due process attack. Petitioner does not now expressly state the question in terms of claiming that Section 15(a)(4) of the Medical Practice Act is unconstitutional, as he did

---

[3] Act of June 4, 1945, P.L. 1388, *repealed* by Act of April 28, 1978, P.L. 202, §2(a), [1244] effective June 27, 1978.

[4] Amicus curiae, S.O.S. Association, Inc., an organization composed of petitioner's patients, has not addressed the issue raised by petitioner but has raised a new question, in essence: May a state statute deprive patients of the care of a physician who is the only source of a certain drug for them, by revoking his license instead of employing less drastic action? Clearly, aside from the very substantial problem of whether such patients have any legal interest, they cannot raise a question which petitioner himself has not presented to us.

before the Pennsylvania board. Nor does petitioner raise any question as to the nature or quantum—or indeed the truth—of the evidence from New Jersey. His complaint is that the Pennsylvania board revoked his license "without hearing any evidence regarding his practice . . . in . . . Pennsylvania." By that claim, he does not seem to be alleging that he was denied notice or hearing or that he was barred from presenting evidence of his professional activities in his *defense;* the gravamen of his attack is that the revocation was not based upon any presentation by the Commonwealth of evidence of Pennsylvania activities, but only upon evidence of matters which occurred *outside* Pennsylvania and *before* he established a practice in Pennsylvania.

We can only view the Pennsylvania statute as providing in effect that, whenever a physician licensed in Pennsylvania has also obtained a medical license elsewhere, he is under a burden to remain in good standing in that other jurisdiction, and his failure to do so, at least for reasons which would warrant revocation in Pennsylvania, can justify withdrawal of his Pennsylvania license to practice.

Viewing that particular subsection, Section 15(a), in its entirety, we note that it authorizes refusal, suspension or revocation of a physician's license for such reasons as: failure to demonstrate qualifications; fraud or deceit; conviction of a felony in Pennsylvania or elsewhere; inability to practice safely by reason of mental or physical inability, drunkenness or drug addiction; violation of regulations; association with violators or unlicensed persons practicing medicine; immoral or unprofessional conduct; and, as pertinent to this case, revocation of license by another state or country.

We agree with the Commonwealth that the action taken here did not amount to a delegation of the au-

thority of the Pennsylvania board to the New Jersey board. Nothing in the statute mandates revocation in Pennsylvania because of a license revocation elsewhere; the statute is clearly an authorization to the Pennsylvania board, not a command.

A reading of the decision of the Pennsylvania board confirms that it thus viewed its powers and duties. The Pennsylvania board did not deem itself compelled to revoke petitioner's license because of the New Jersey action; it ordered revocation of the Pennsylvania license because the New Jersey revocation had taken place for reasons which could well be summarized as unprofessional conduct under Pennsylvania law, as well as under New Jersey law.

Petitioner has made no claim that the conduct which resulted in the New Jersey revocation would fall short of grounds for license revocation if it had occurred in Pennsylvania. Petitioner's attack, as noted above, is not directed at the substance of the New Jersey findings as to the history of his actions in New Jersey, but to the geographical and chronological distinctions—that those things happened outside Pennsylvania and before he had a practice in Pennsylvania.

Clearly, geographical distinctions are irrelevant to the quality of professional conduct. Failure to conduct oneself professionally outside the jurisdiction, or failure to maintain professional good standing outside the jurisdiction, is fully relevant to the acceptability of a professional licensee in Pennsylvania.

Appropriate and persuasive is a New York case upholding the revocation on an optometrist's New York license for acts committed in California, stating:

> The board did not exceed its authority in proceeding on acts committed outside New York. The statute does not speak on this point

(see Education Law, §6509), but to the extent regulation of the profession is undertaken in order to preserve high ethics within the professions, *it would make no sense to require the regulatory agency to ignore misconduct committed outside this State.* Petitioner does not dispute that the fraudulent acts he has admitted would constitute misconduct if performed in this State. (Emphasis added.)

*Miles v. Nyquist,* 400 N.Y.S. 2d 868, 871, 60 A.D. 2d 133 (1977).

Similarly, as to the chronological point, unprofessional conduct or loss of professional status before commencing practice in Pennsylvania is clearly relevant to continued qualification here, except where such conduct or loss has been extremely remote in time, which was not the case here. Moreover, the conduct in question took place during the period that petitioner held a Pennsylvania license.

To the contention that conduct outside the jurisdiction of office location is immaterial, the succinct answer is that the current office location itself could be immaterial, but the professional actions and professional status, wherever and whenever existing, of a physician entrusted to practice medicine in Pennsylvania, are relevant indeed.

We therefore affirm the adjudication and order of the State Board of Medical Education and Licensure.

## ORDER

AND Now, this 4th day of December, 1979, the Adjudication and Order of the State Board of Medical Education and Licensure dated May 24, 1978, relating to the petitioner herein, is affirmed. This court's order of supersedeas, dated June 19, 1978, is dissolved.