COMMONWEALTH of Pennsylvania, Appellee,

v.

Abraham Martinez COTTO, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1997.

Filed Feb. 19, 1998.

Joseph C. Madenspacher, Dist. Atty., Lancaster, for Commonwealth, Appellee.

James J. Karl, Chief Public Defender, Lancaster, for Appellant.

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Amicus Curiae.

Mark Scott–Sedley, Philadelphia, for Amicus Curiae.

Before CAVANAUGH, HOFFMAN and BROSKY, JJ.

CAVANAUGH, Judge:

This appeal requires that we decide the constitutionality of certain 1995 amendments to the Juvenile Act. Specifically, we consider arguments that the provisions regarding transfer of cases from adult criminal court to juvenile court are: (1) unconstitutionally vague; and (2) unconstitutional because they place the burden of proof for transfer on the juvenile. After careful review, we conclude the amendments conform with constitutional standards and affirm appellant's judgment of sentence.

Appellant, Abraham Martinez Cotto, was charged with six counts of armed robbery and two counts of criminal conspiracy. These charges arose in relation to separate incidents in which appellant and several accomplices robbed two business establishments at gunpoint. At the time of both of these incidents, appellant was fifteen years of age.

■ The Commonwealth charged appellant as an adult with respect to both incidents. Appellant filed a motion to transfer the proceedings to juvenile court. He also filed a petition for writ of habeas corpus, alleging the recent amendments to the Juvenile Act governing transfer were unconstitutional. The trial court denied both of these filings. Pursuant to a negotiated plea agreement, appellant entered guilty pleas to the above-enumerated charges and received eight concurrent sentences of five to ten years imprisonment. The plea agreement specifically reserved the right to appeal the constitutionality of the amendments to the Juvenile Act.[1] This appeal followed.

■ Appellant has framed the issues on appeal as follows:

I. Are the provisions of the Juvenile Act regarding the transfer of cases from adult court to juvenile court unconstitutionally vague by defining an unknown and unknowable standard that such transfer "serve the public interest"?

II. Are the provisions of the Juvenile Act regarding the transfer of cases from adult court to juvenile court unconstitutional because they impermissibly place on the accused the burden of proof for transfer?[2]

---

[1]. The entry of a guilty plea serves as a waiver of all defects and defenses except those concerning jurisdiction, legality of sentence and the validity of the plea. *Commonwealth v. Reichle,* 404 Pa.Super. 1, 589 A.2d 1140, 1141 (1991); *Commonwealth v. Montgomery,* 485 Pa. 110, 401 A.2d 318 (1979). With respect to cases predating the amendment of the Juvenile Act, it was well established that the issue of certification of a juvenile to stand trial as an adult was a jurisdictional issue and could not be waived. *Commonwealth v. McGinnis,* 450 Pa.Super. 310, 675 A.2d 1282, 1284 (1996); *Commonwealth v. Moyer,* 497 Pa. 643, 444 A.2d 101 (1982). Although the issues raised by appellant do not directly challenge the filing of the charges in this case in adult criminal court, we nonetheless find that they do implicate the issue of jurisdiction. The question of transfer is ultimately a determination of whether the criminal court or the juvenile court will exercise jurisdiction over a juvenile's case. As such, the waiver doctrine is inapplicable. In any event, the plea agreement specifically reserved to appellant the right to appeal the denial of the constitutional issues raised in his petition for habeas corpus. *Commonwealth v. Zelasny,* 430 Pa.Super. 585, 635 A.2d 630 (1993) (merits of suppression issue addressed on appeal where defendant entered guilty plea subject to right to appeal the issue); *Commonwealth v. Terreforte,* 387 Pa.Super. 453, 564 A.2d 479 (1989) (trial court without authority to accept guilty plea which reserved right of defendant to appeal Rule 1100 issue), *rev'd,* 526 Pa. 448, 587 A.2d 309 (1991)(per curiam order directing Superior Court to review Rule 1100 claim).

[2]. Amicus curiae, Defender Association of Philadelphia, has filed a brief with this Court and raised several issues that have not been raised by appellant.

An amicus curiae is not a party and cannot assume the functions of a party.... He has no control over the litigation and no right to institute any proceedings therein; *he must accept the case before the court with the issues made by the parties.*

■ We begin with the recognition that there is no constitutional guarantee to special treatment for juvenile offenders. *Commonwealth v. Williams,* 514 Pa. 62, 71, 522 A.2d 1058, 1063 (1987). Any right to treatment as a juvenile is derived from statutory law and is defined by the legislature. The legislature may restrict or qualify this right, but in doing so, must observe constitutional due process and avoid a classification scheme that is arbitrary or discriminatory. *See Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Stokes v. Fair,* 581 F.2d 287 (1st Cir.1978); *Woodard v. Wainwright,* 556 F.2d 781 (5th Cir.1977); *United States v. Bland,* 472 F.2d 1329 (D.C.Cir.1972).

The dramatic increase in violent crimes committed by juveniles in our society has resulted in many state legislatures reformulating the principles and policies underlying the juvenile justice system. This trend has been marked by a move away from a tutorial and habilitative emphasis, toward more punishment and correctional oriented policies for juvenile offenders. Many states have removed certain categories of serious offenses from the jurisdiction of the juvenile court and placed them within the jurisdiction of the criminal court. The recent amendments to Pennsylvania's Juvenile Act are a reflection of these societal and legal trends. With this background and the above-stated principles in mind, we review the pertinent provisions of the Juvenile Act.

■ . Under the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.,* the juvenile court has jurisdiction over "children" charged with "delinquent acts." 42 Pa.C.S.A. § 6303(a)(1). "Child" is defined, *inter alia,* as "An individual who is under the age of 18 years." 42 Pa.C.S.A. § 6302. "Delinquent Act" is defined as follows:

(1) The term means an act designated a crime under the law of this Commonwealth, or of another state if the act

occurred in that state, or under Federal law, or under local ordinances.

(2) The term shall **not** include:

\* \* \*

(ii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct and a deadly weapon as defined in 18 Pa.C.S. § 2301 (relating to definitions) was used during the commission of the offense, which, if committed by an adult, would be classified as:

\* \* \*

(D) Robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery).

\* \* \*

(I) An attempt, conspiracy or solicitation to commit murder or any of these crimes, as provided in 18 Pa.C.S. §§ 901 (relating to criminal attempt), 902 (relating to criminal solicitation) and 903 (relating to criminal conspiracy).

*Id.* (emphasis supplied). Offenses not included within the definition of "delinquent act" are filed directly in criminal court, rather than in juvenile court. § 6355(e) provides:

**(e) Murder and excluded acts.**—Where the petition alleges conduct which if proven would constitute murder, or any of the offenses excluded by paragraph (2)(ii) or (iii) of the definition of **"delinquent act"** in section 6302 (relating to definitions), the court shall require the offense to be prosecuted under the criminal law and procedures, except where the case has been transferred pursuant to section 6322 (relating to transfer from criminal proceedings) from the division or a judge of the court assigned to conduct criminal proceedings.

---

*Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978) (nonmajority decision) (quoting 4 Am. Jur.2d *Amicus Curiae* § 3 at 111 (1962)(collecting numerous cases)(emphasis added)). *See also Seidman v. Insurance Commissioner of Commonwealth,* 110 Pa.Cmwlth. 401, 532 A.2d 917 (1987); *DeMarco v. Commonwealth, State Board of Medical Education,* 47 Pa.Cmwlth. 500, 408

A.2d 572 (1979). Accordingly, we will address the issues raised by Defender Association only to the extent they were raised by the parties. While we do not decide the merits of the additional issues raised by Defender Association, we do so without prejudice to their being raised and disposed of in a future case, in which they have been properly preserved by the parties.

42 Pa.C.S.A. § 6355(e) (emphasis in original). Transfer from criminal proceedings is governed by § 6322(a), which provides in pertinent part:

If it appears to the court in a criminal proceeding charging murder or any of the offenses excluded by paragraph (2)(ii) or (iii) of the definition of **"delinquent act"** in section 6302, that the defendant is a child, the case may be transferred and the provisions of this chapter applied. In determining whether to transfer a case charging murder or any of the offenses excluded from the definition of **"delinquent act"** in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings).

*Id.* (boldface in original; underline supplied).

In determining whether the child has met the burden of proving that the transfer will serve the public interest, the court considers the following factors:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors.

42 Pa.C.S.A. § 6355(a)(4)(iii).

Appellant argues that despite this list of factors, the requirement that the transfer "serve the public interest" is impermissibly vague and that this threshold, even when examined in light of the statutorily enumerated factors, is so elastic and so open to subjective interpretation that it invites arbitrary and discriminatory application.

 Duly enacted legislation carries with it a strong presumption of constitutionality and this presumption will not be overcome unless the legislation clearly, palpably and plainly violates the constitution. *Commonwealth v. Swinehart*, 541 Pa. 500, 508, 664 A.2d 957, 961 (1995); *Commonwealth v. Highhawk*, 455 Pa.Super. 186, 687 A.2d 1123, 1128 (1996). The party seeking to have a legislative enactment declared unconstitutional bears a heavy burden. *In re Petition to Recall Reese*, 542 Pa. 114, 119, 665 A.2d 1162, 1164 (1995). A law is void on its face, and violative of due process, if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Commonwealth v. Sterling*, 344 Pa.Super. 269, 496 A.2d 789, 792 (1985). The constitutional prohibition against vagueness does not invalidate every statute that could have been drafted with greater precision, but we must consider the essential fairness of the law and the impracticability of drafting the legislation with greater specificity. *Id.* Due process simply requires the statute be drafted with sufficient definiteness that it is not susceptible to arbitrary and discriminatory enforcement. *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996).

As noted, appellant's argument focuses on the allegedly unconstitutionally vague meaning of "public interest" as used in the transfer provision of the Juvenile Act. The object of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). When the words of a statute are not explicit, the intention of the legislature may be ascertained by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c). Moreover, we must presume the legislature did not intend to violate either the Constitution of the United States or this Commonwealth. 1 Pa.C.S.A. § 1922(3). Where a court of last resort has construed the language of a statute, we must presume the legislature, in subsequent statutes on the same subject matter, intends the same construction to be placed on such language. 1 Pa.C.S.A. § 1922(4). However, a change in the language of a statute by the legislature generally indicates a change in its intent. *Masland v. Bachman*, 473 Pa. 280, 289, 374 A.2d 517, 521 (1977). Finally, we must construe each individual provision with a view to its place in the entire legislative structure of the act. *In the Interest of M.L.E.*, 429 Pa.Super. 248, 632 A.2d 329, 330 (1993).

Prior to amendment, the Juvenile Act provided:

**(b) Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

42 Pa.C.S.A. § 6301(b)(2) (effective June 27, 1978). Once a child was found to be delinquent, the juvenile court was authorized to make orders of disposition that were "best suited to his treatment, supervision, rehabilitation and welfare." 42 Pa.C.S.A. § 6352 (effective June 27, 1978).

§§ 6301 and 6352 were both substantially altered by the 1995 amendments. § 6301(b)(2) now provides:

**(b) Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which <u>provide balanced attention</u> to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2) (amended 1995) (emphasis supplied). Consistent with this language, the juvenile court, in the case of a child found to be delinquent, is authorized to make:

"orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible member of the community."

42 Pa.C.S.A. § 6352 (amended 1995).

The legislative history of the Act further highlights the legislature's concern that the juvenile system was no longer able to deal effectively with the increasing number of vio-

lent crimes committed by juvenile offenders. The following comments are reflective of this concern:

> I think that as you look across Pennsylvania, when you look at the statistics on crime, both adult and juvenile crime, when you look at the perceptions of the general public across Pennsylvania, people are fed up with violent crime, and they are particularly fed up with violent crime that has been committed and continues to be committed in this Commonwealth by juveniles. The young thugs across this Commonwealth who have held people hostages in their homes and in their streets and neighborhoods will come to an end. Hopefully, it will be somewhat abated by the passage of this legislation. What this bill does is carries through on a theme that was echoed by Governor Ridge, both as a candidate and in announcing this session, which basically says that if you commit adult crime, you are going to do adult time.

> * * *

> One of the criticisms of the current juvenile justice system is the fact that many juveniles are back in the community oftentimes before the victim heals from the injuries they have suffered and under this bill that is going to change. Under this bill, if a person 15 years of age or older commits that adult crime, they are going to be tried and they are going to be sentenced, whether it be a sentence of imprisonment of 5 to 10 years, or perhaps even more, to serve time that is not only going to be rehabilitative but that is going to be the appropriate punishment for the crime that has been committed ... [J]uveniles who are the violent offenders, who have proved they have not been amenable to treatment under the juvenile system, will, therefore, be handled by adult court.

> * * *

> [T]his is a sensible step in amending the juvenile justice system across Pennsylvania. It is a sensible step that is going to say to the people of Pennsylvania who are tired of being robbed by young juveniles who are committing crimes and getting off

> like other juveniles, it is a sensible step that is going to say that that is going to end.

1995 Legislative Journal No. 41, at 227–28 (Statement of Sen. Fisher, June 19, 1995).

These comments and concerns, as well as the legislative purpose of the Act, as outlined in § 6301(b), are reflected in the laundry list of factors in § 6355(a)(4)(iii). In view of the legislative history of the Act, its stated purpose and specific provisions, we conclude that the provisions in question clearly and adequately define the "public interest" and that they are not unconstitutionally vague. A transfer back to juvenile court pursuant to 42 Pa.C.S.A. § 6322 is in the "public interest" when, considering all the criteria in § 6355, the court is convinced by a preponderance of the evidence that the child is amenable to treatment, supervision, and rehabilitation as a juvenile, treatment as a juvenile is consistent with the legislature's intent to hold the child accountable for his/her offenses, and treatment as a juvenile does not jeopardize the public safety.

We note that appellant has cited a number of cases which have found "public interest" to be unconstitutionally vague. These cases, however, involved statutes that did not define or otherwise amplify the meaning of "public interest." Without such guidance, application of the statute(s) hinged on some vague notion of what constituted the "public interest" and invited arbitrary and discriminatory enforcement. In *Bell Telephone Co. v. Driscoll*, 343 Pa. 109, 21 A.2d 912 (1941), our Supreme Court stated:

> Before any commission can decide whether a contract is contrary to the public interest, it is necessary to find what is or what is not in the public interest. The power to make such determination rests with the legislature and without such declaration the commission would be without a standard or criterion. ... As we have said: "In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are

strictly governed. * * * If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity."

*Id.* at 116, 21 A.2d at 915–16 (citations omitted). Here, the legislative history of the Juvenile Act and its statement of purpose clearly define what the legislature meant by the "public interest." Additionally, § 6355(a)(4)(iii) specifically sets forth a list of factors to consider in determining whether transfer will serve the "public interest." These factors give adequate notice of the meaning of "public interest" and provide adequate guidance to a court faced with the question of transfer.

■ With regard to his second issue, appellant argues that the Act impermissibly places on the juvenile the burden of proof for transfer from criminal court to juvenile court. He maintains that the burden of proof in a criminal case is always on the Commonwealth and it is the Commonwealth's burden to disprove defenses raised by an accused.

As we have already noted, there is no constitutional guarantee to special treatment for juvenile offenders. *Williams, supra.* The juvenile law is defined by the legislature and, in general, must only comply with constitutional guarantees of due process. *See Kent, Stokes, Woodard, Bland, supra.*

In *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), our Supreme Court commented on the treatment of juveniles charged with murder under the pre-amended Act:

Murder has always been excluded from the jurisdiction of the juvenile courts. Having continued to place murder, even where a young offender is involved, within the original and exclusive jurisdiction of the adult court, the assumption that the need for adult discipline and legal restraints exists in cases of this heinous nature also continues. With this in mind it becomes the juvenile's burden to show that he does not belong in the criminal court. In other words, it is the youth who must prove that he belongs in the juvenile setting by showing his *need* and *amenability*

to the "program of supervision, care and rehabilitation" which he would receive as a juvenile.

*Id.* at 622–23, 342 A.2d at 106 (citations omitted) (emphasis in original). With respect to placing the burden for transfer on the juvenile, the Court further stated:

The decision to transfer has no bearing on either the procedural or substantive aspects of the criminal conviction in criminal court (*i.e.*, it is still the Commonwealth's burden to prove every fact necessary to constitute murder beyond a reasonable doubt). Consequently, placing the burden on a petitioner in this manner in no way denies him his due process safeguards.

*Id.* at 622 n. 13, 342 A.2d at 106 n. 12 (citations omitted). The Court reached this conclusion even though the nature and circumstances of the alleged homicide were proper considerations in deciding transfer. Under the pre-amended Act, in deciding the amenability of juvenile treatment, the trial court was not limited to considering the child's personal characteristics and previous history, but was also directed to consider the nature and circumstances of the alleged homicide, including whether the killing was committed in an aggressive, violent or willful manner and whether the safety of the community required lengthy incarceration. *Id.* at 623 n. 14, 342 A.2d at 107 n. 13.

We find the reasoning of *Pyle* to be equally applicable to the amended Act, which mandates that certain violent offenses, in addition to murder, be filed directly in criminal court. A juvenile adjudicatory proceeding differs widely in purpose, scope and result from a juvenile transfer proceeding. At the adjudicatory stage, constitutional due process guarantees the juvenile almost the full panoply of constitutional protections afforded at an adult criminal trial. During the adjudicatory stage, whether in juvenile or criminal court, a full trial is held on the offenses with which the juvenile is charged and a final determination of guilt is made. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)(in juvenile adjudicatory proceeding, elements of crime must be proven beyond a

814

reasonable doubt); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (in juvenile adjudicatory proceeding, juvenile entitled to adequate notice of charges, to counsel, to invoke right against self-incrimination, and to right of cross-examination). *But see McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (jury not required during adjudicatory stage of juvenile proceedings). At a juvenile transfer proceeding, however, the inquiry is focused upon the narrower question of determining the appropriate forum for the adjudicatory proceeding—either juvenile court or criminal court. No determination of guilt takes place and the inquiry into the nature and circumstances of the crimes charged is limited to determining the amenability of treatment of the juvenile and the need to protect the public. Moreover, although the punishment ultimately imposed is related to the decision made at the transfer proceeding, the imposition of punishment does not occur until after the Commonwealth has met its burden of proving each element of the crimes charged beyond a reasonable doubt.

We further note that Pennsylvania courts have upheld the placement of the burden on an accused in other contexts, so long as such placement does not violate the maxim that the Commonwealth is charged with proving each element of an offense beyond a reasonable doubt. *See e.g. Commonwealth v. duPont,* 545 Pa. 564, 681 A.2d 1328 (1996) (due process not violated where legislature requires criminal defendant to demonstrate his incompetence to stand trial by a preponderance of the evidence); *Commonwealth v. Walker,* 540 Pa. 80, 656 A.2d 90 (1995) (death penalty statute does not violate due process by placing burden on accused of proving mitigating circumstances by a preponderance of the evidence); *Commonwealth v. Santiago,* 376 Pa.Super. 54, 545 A.2d 316 (1988) (legislature may place on criminal defendant a burden of proof in regard to any affirmative defense which relieves the accused of criminal responsibility but does not negate an element of crime; due process not violated by requiring accused to prove insanity by a preponderance of the evidence), *overruled on other grounds,* 405 Pa.Super. 56, 591 A.2d 1095 (1991) (en banc).

Finally, we note that other jurisdictions, with offense exclusion provisions similar to Pennsylvania's, have addressed the constitutionality of placing the burden for transfer to juvenile court on the accused. In *Commonwealth v. Wayne W.,* 414 Mass. 218, 606 N.E.2d 1323 (1993), the Supreme Judicial Court of Massachusetts opined:

Where there is evidence warranting a finding beyond a reasonable doubt that a juvenile has committed murder, it is entirely reasonable to assume that the juvenile presents a significant danger to the public and may not be amenable to rehabilitation within the juvenile justice system. See *Breed v. Jones, supra* 421 U.S. [519] at 535, 95 S.Ct. [1779] at 1788–89 [44 L.Ed.2d 346 (1975)] ("there appears to be widely shared agreement that not all juveniles can benefit from the special features and programs of the juvenile-court system. ... [T]ransfer provisions represent an attempt to impart to the juvenile-court system the flexibility needed to deal with youthful offenders who cannot benefit from the special guidance and treatment contemplated by the system"). The juvenile is the party in the best position to produce evidence to the contrary, which, most often, will include lay testimony by family members, teachers, or other adult acquaintances, and expert psychological and psychiatric testimony. Federal due process guarantees are not impinged on where the Legislature requires, by way of a rebuttable presumption of the type in § 61, ..., *supra,* that the juvenile assume the initial burden of producing evidence that he is not dangerous and should have his case remain within the juvenile justice system.

The preponderance of the evidence standard in the new amended § 61 also represents an acceptable balance between the various interests at stake in the transfer hearing, and as such is not in violation of Federal due process guarantees.

*Id.* 606 N.E.2d at 1327.

Similarly, in *State in Interest of A.L.,* 271 N.J.Super. 192, 638 A.2d 814 (A.D.1994), the New Jersey Superior Court examined that state's juvenile waiver statute and held:

We conclude that New Jersey's statutory scheme is clearly constitutional in the

wider sense. As observed, historically, a juvenile has no right to remain before the juvenile court, except as provided by statute. A juvenile is not even constitutionally entitled to a hearing before transfer to adult court. In light of this history, we conclude that a legislature may completely exclude certain serious offenses from juvenile court jurisdiction. The legislature may also place the burden of proof on the juvenile to rebut the strong presumption of unfitness for juvenile treatment created by the statute. We conclude that this classification scheme is neither arbitrary nor discriminatory. The legislature may quite rationally assume that a juvenile who has committed a serious crime poses a danger to the community and probably may not be amenable to rehabilitation within the juvenile system.

*Id.* 638 A.2d at 820.[3]

We have reviewed appellant's constitutional challenges to the legislature's recent amendments to the Juvenile Act. After considering the arguments of the parties and relevant legal authority, we conclude that the transfer provision of the Act is not unconstitutionally vague as it provides adequate notice of the meaning of "public interest" and sufficient guidance to a court presented with the question of transfer. We also conclude that due process is not violated by placing the burden for transfer from criminal court to juvenile court on the juvenile. Having concluded that the Act passes constitutional muster, we affirm the judgment of sentence imposed by the trial court.

Judgment of sentence affirmed.

**3.** We note that the New Jersey statute immunizes the juvenile's testimony at the transfer hearing in order to ensure that he can participate fully in that proceeding. *Id.;* N.J.S.A. 2A:4A-29. The *A.L.* court noted that the statute did not violate a juvenile's right against self-incrimination because it neither compelled a juvenile to testify at the transfer hearing nor required an admission of guilt by the juvenile in order for the juvenile court to exercise jurisdiction in the case. *A.L., supra* at 822. In any event, the court noted that even if an admission of guilt were necessary for

the juvenile court to exercise jurisdiction, the juvenile's testimony is fully immunized and he is not penalized in any way by testifying at the transfer hearing. *Id.*

The Pennsylvania Juvenile Act does not provide immunity to a juvenile testifying at his transfer hearing. Although the absence of such a provision does not effect our decision as to constitutionality, we believe that inclusion of an immunity provision would be prudent and merits legislative consideration.