**In the Interest of J.F.**

**Appeal of J.F.**

**In Interest of G.G.**

**Appeal of G.G.**

Superior Court of Pennsylvania.

Argued March 3, 1998.

Filed June 2, 1998.

and find the evidence sufficient to sustain the trial court's adjudication as to J.F. With respect to G.G. we find the evidence insufficient to sustain the court's adjudication. Accordingly, we affirm the order entered at 494 HBG 1997 and reverse the order entered at 628 HBG 1997.

J.F. and G.G. were charged in separate unrelated incidents. J.F. was charged with involuntary deviate sexual intercourse, rape and aggravated indecent assault in relation to an incident in which he allegedly sexually assaulted a fifteen year old girl while she was asleep in her bed. The court found beyond a reasonable doubt that J.F. committed the delinquent act of IDSI. It dismissed the remaining charges.

With respect to G.G., the Commonwealth charged him with robbery and criminal conspiracy in relation to an incident in which G.G.'s alleged co-conspirator verbally threatened and then took an item of personal property from another minor. The court found beyond a reasonable doubt that G.G. committed the delinquent act of criminal conspiracy. It dismissed the robbery charge. Following J.F.'s and G.G.'s respective appeals, we consolidated the cases for argument and disposition as they raised a common question of law.

Appellants' primary argument on appeal is that the amendments to the Juvenile Act have radically transformed the nature and function of Pennsylvania's juvenile court from a benevolent institution concerned with the welfare and rehabilitation of young offenders into a more punitive system, much more akin to the adult criminal justice system. They highlight that juveniles are now subject to numerous serious and far-reaching consequences as a result of an adjudication of delinquency, including: automatic prosecution of juveniles as adults in the criminal justice system following only one prior delinquency adjudication with respect to certain designated felonies; opening juvenile proceedings to the public for most purposes; requiring disclosure of delinquency adjudications to the offender's school; authorizing disclosure of juvenile records to the public under certain circumstances; and authorizing the use of a juvenile's delinquency record in

Marsha Levick, Philadelphia, for appellants.

Eric R. Augustine, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and FORD ELLIOTT, JJ.

CAVANAUGH, Judge:

These consolidated appeals require that we once again examine the constitutional implications of certain 1995 amendments to the Juvenile Act. Specifically, we must determine whether due process requires that appellants, each of whom was charged with certain designated felonies under the Juvenile Act, be afforded a right to a jury trial given that: (1) the recent amendments to the Act allegedly serve to substantially criminalize the juvenile court; and (2) appellants' respective adjudications will lead to their being charged as adults for any subsequent arrest for one of these designated felonies. J.F. and G.G. also challenge the sufficiency of the evidence to sustain their respective adjudications of delinquency. After careful review, we discern no constitutional violation

any subsequent criminal prosecution for evidentiary, bail and sentencing purposes.

Recently in *Commonwealth v. Cotto*, 708 A.2d 806 (Pa.Super.1998) a different panel of this Court examined the constitutionality of the amended transfer provisions of the Juvenile Act. Although presented with different issues, our starting point is the same. In *Cotto*, the panel stated:

> We begin with the recognition that there is no constitutional guarantee to special treatment for juvenile offenders. *Commonwealth v. Williams*, 514 Pa. 62, 71, 522 A.2d 1058, 1063 (1987). Any right to treatment as a juvenile is derived from statutory law and is defined by the legislature. The legislature may restrict or qualify this right, but in doing so, must observe constitutional due process and avoid a classification scheme that is arbitrary or discriminatory. *See Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Stokes v. Fair*, 581 F.2d 287 (1st Cir.1978); *Woodard v. Wainwright*, 556 F.2d 781 (5th Cir.1977); *United States v. Bland*, 472 F.2d 1329 (D.C.Cir.1972).

*Cotto* at 809.

■ In juvenile proceedings, constitutional due process guarantees a juvenile almost the full panoply of constitutional protections afforded at an adult criminal trial. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (in juvenile adjudicatory proceeding, elements of crime must be proven beyond a reasonable doubt); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (in juvenile adjudicatory proceeding, juvenile entitled to adequate notice of charges, to counsel, to invoke right against self-incrimination, and to right of cross-examination). However, neither our courts nor the Supreme Court has mandated that a juvenile offender be afforded the right to a jury trial in a juvenile proceeding.

In *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) a majority of the Court agreed that due process did not guarantee the right to a jury trial in the adjudicative phase of a state juvenile court delinquency proceeding. Writing for the plurality, Justice Blackmun stated:

> [W]e conclude that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement. We so conclude for a number of reasons:
>
> 1. The Court has refrained ... from taking the easy way with a flat holding that all rights constitutionally assured for the adult accused are to be imposed upon the state juvenile proceeding.
>
> "It is clear to us that the Supreme Court has properly attempted to strike a judicious balance by injecting procedural orderliness into the juvenile court system. It is seeking to reverse the trend [pointed out in *Kent*, 383 U.S., at 556, 86 S.Ct. 1045, 16 L.Ed.2d at 94] whereby 'the child receives the worst of both worlds....' "
>
> 2. There is a possibility, at least, that the jury trial, if required as a matter of constitutional precept, will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> 4. The Court has specifically recognized by dictum that a jury is not a necessary part even of every criminal process that is fair and equitable. *Duncan v. Louisiana*, 391 U.S. [145] at 149–50, n. 14, and 158 [88 S.Ct. 1444], 20 L.Ed.2d [491] at 496, and 501 [1968].
>
> 5. The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner. It would not remedy the defects of the system. Meager as has been the hoped-for advance in the juvenile field, the alternative would be regressive, would lose what has been gained, and would tend once again to place the juvenile squarely in the routine of the criminal process.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> 12. If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality,

and clamor of the adversary system, and, possibly, the public trial.

*McKeiver,* 403 U.S. at 545–50, 91 S.Ct. 1976, 29 L.Ed.2d at 661–63.

 As appellants correctly point out, the juvenile justice system has undergone a transformation over the past two decades in which there has been a move away from the rehabilitation and protection of juvenile offenders toward more punishment and correctional oriented policies. Nonetheless, we cannot conclude that a juvenile adjudication has, in essence, become the equivalent of an adult criminal proceeding. The recent amendments to the Act are a reflection of the changing nature of juvenile crime, as society has witnessed a progression in the number of violent offenses committed by juveniles.

While the principles and policies underlying our juvenile justice system have evolved, particular importance is still placed upon rehabilitating and protecting society's youth. Prior to amendment, the Juvenile Act provided:

(b) **Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

42 Pa.C.S.A. § 6301(b)(2) (effective June 27, 1978). Once a child was found to be delinquent, the juvenile court was authorized to make orders of disposition that were "best suited to his treatment, supervision, rehabilitation and welfare." 42 Pa.C.S.A. § 6352 (effective June 27, 1978).

§§ 6301 and 6352 were both substantially altered by the 1995 amendments. § 6301(b)(2) now provides:

(b) **Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which *provide balanced attention* to the protec-

tion of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2) (amended 1995) (emphasis supplied). Consistent with this language, the juvenile court, in the case of a child found to be delinquent, is authorized to make:

"orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible member of the community."

42 Pa.C.S.A. § 6352 (amended 1995).

The changes in the stated purpose of the Act reflect a concern that juveniles be held accountable for their actions and that the community be protected from violent juvenile offenders. These are not the court's exclusive concerns, however, as they must be balanced with the goal of developing juvenile offenders into responsible and productive members of the community. Any program of supervision, care and rehabilitation chosen by the juvenile court must provide balanced attention to all three of these concerns. As such, concern for the juvenile remains a cornerstone of our system of juvenile justice.

It is also highly significant that the juvenile adjudication proceeding remains an intimate, informal and protective proceeding. The Juvenile Act provides:

§ 6336. **Conduct of hearings.**

(a) **General rule.**—Hearings under this chapter shall be conducted by the court without a jury, in an informal but orderly manner, and separate from other proceedings not included in section 6303 (relating to scope of chapter).

42 Pa.C.S.A. § 6336(a).

 Appellants warn of dire and far-reaching consequences to juvenile offenders

that the amendments to the Act will bring about. We find however, that these changes do not undermine the informal and protective nature of the juvenile proceeding and do not militate in favor of a finding that due process requires the right to a jury trial at the adjudication proceeding.

■ With respect to (1) the automatic prosecution of juveniles as adults following a prior delinquency adjudication of a designated felony and (2) the use of the juvenile's delinquency record in subsequent criminal prosecutions for evidentiary, bail and sentencing purposes, we note that either of these situations will only occur, if at all, after a juvenile allegedly commits a new offense(s). Neither will directly nor indirectly affect the present adjudication. Moreover, at any subsequent criminal proceeding the juvenile will be afforded the right to a jury trial and any charged offenses will have to be proved beyond a reasonable doubt. Finally, because there is no constitutional right to treatment as a juvenile, the legislature is well within its right to withdraw any privileges granted under the pre-amended statute. *See Cotto; Commonwealth v. Presley*, 455 Pa.Super. 13, 686 A.2d 1321 (1996) (it is within right of legislature to withdraw privileges granted under pre-amended statute and those adjudicated delinquent under old Act bear risk that legislature may revoke such privileges in a subsequent enactment).

■ As to the remaining consequences highlighted by appellants, (1) the opening of juvenile proceedings to the public for most purposes, (2) requiring disclosure of delinquency adjudications to the offender's school and (3) authorizing disclosure of juvenile records to the public under certain circumstances, we note these measures are not designed to punish a juvenile offender but are deemed by the legislature to be necessary for the protection of the public. Each is minimally intrusive to the rights of the juvenile and with the exception of the opening of most juvenile proceedings to the public, take

place only after an adjudication has occurred. Finally, as with the other consequences highlighted by appellants, the legislature retains the right to revoke any privileges afforded under the previous Act. *See Presley.*

■ Finally, we note that the disposition of the juvenile following an adjudication of delinquency is limited by statute. Pursuant to § 6352(a), the court may make any of the following orders of disposition:

(1) Any order authorized by section 6351 (relating to disposition of dependent child).[1]

(2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in section 6363 (relating to ordering foreign supervision), under conditions and limitations the court prescribes.

(3) Committing the child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare.

(4) If the child is 12 years of age or older, committing the child to an institution operated by the Department of Public Welfare.

(5) Ordering payment by the child of reasonable amounts of money as fines, costs or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child. . . .

(6) An order of the terms of probation may include an appropriate fine considering the nature of the act committed or restitution not in excess of actual damages caused by the child which shall be paid from the earnings of the child received through participation in a constructive program of service or education acceptable to the

---

1. Pursuant to this subsection, the court may permit the child to remain with his parent, guardian or other custodian subject to any conditions or limitations prescribed by the court. The court may also transfer temporary legal custody to another individual or any private organization or public entity authorized to receive and provide care for children. Such a transfer is also subject to any conditions and limitations prescribed by the court.

victim and the court whereby, during the course of such service, the child shall be paid not less than the minimum wage of this Commonwealth....

In selecting from the alternatives set forth in this section, the court shall follow the general principle that the disposition imposed should provide the means through which the provisions of this chapter are executed and enforced consistent with section 6301(b) (relating to purposes) and when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child.

42 Pa.C.S.A. § 6352(a). As is evident from these dispositional alternatives, a juvenile who is adjudicated delinquent does not face the grave consequences of criminal conviction and incarceration.

In view of the stated purposes of the amended Act, that the adjudication proceeding remains an informal protective proceeding, that the amendments to the Act do not undermine the goal of supervision, care and rehabilitation of juvenile offenders and that the dispositional alternatives available to the court remain rehabilitative and are not punitive in nature, we conclude that due process does not require that a juvenile be afforded the right to a jury trial at a juvenile adjudication proceeding. Much of the reasoning of the plurality in *McKeiver*, despite the changes in society and the juvenile system in the intervening twenty-seven years, remains valid and compelling in reference to the juvenile court system of today. Notwithstanding increasing evidence of instability in our society and the resultant changes in our system of juvenile justice, "we must never forget that in creating a separate juvenile system, the [legislature] did not seek to 'punish an offender but to salvage a boy [sic] who may be in danger of becoming one.'" *In the Interest of K.B.*, 432 Pa.Super. 586, 639 A.2d 798, 807 (1994) (*quoting In re Holmes*, 379 Pa. 599, 603, 109 A.2d 523, 525 (1954)), *overruled on other grounds*, 547 Pa. 237, 690 A.2d 175 (1997). The present scheme of the Act effectively retains this worthwhile goal, despite a greater emphasis on the protection of the public and the accountability of juvenile offenders, especially in regard to violent crimes. As such, we reaffirm the principle that due process does not require that a juvenile be afforded the right to a jury trial in a juvenile adjudication proceeding.

We now turn to the sufficiency claims.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'"

*Commonwealth v. Shoup*, 423 Pa.Super. 12, 620 A.2d 15, 17 (1993). (citations omitted). Moreover, a combination of direct and circumstantial evidence or circumstantial evidence alone will sustain a guilty verdict so long as the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988).

■ Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find that it was sufficient to prove J.F. guilty beyond a reasonable doubt of IDSI. A person is guilty of IDSI when he or she engages in deviate sexual intercourse with a complainant:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; or

(3) who is unconscious or where the person knows that the complainant is

unaware that the sexual intercourse is occurring.

18 Pa.C.S.A. § 3123(a).

The evidence at trial and the reasonable inferences that may be drawn therefrom established that J.F. was staying with the victim's family. While the victim was asleep, he entered her room and got into her bed while she was asleep. J.F. rubbed and squeezed the victim's breasts. He then placed his penis in her anus. The victim fell off of her bed. She heard someone running down the stairs. As she lay on the floor, she noticed that her pants were pulled partially down and that her underwear was wet. She also had red marks on her chest. At trial, victim identified J.F. as her attacker. In view of this evidence, appellant's sufficiency claim fails.

■■■ Turning to G.G.'s sufficiency claim, after careful review, we find the evidence insufficient to prove him guilty beyond a reasonable doubt of criminal conspiracy to commit robbery.

The Crimes Code defines criminal conspiracy:

 (a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

 (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

 (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

The evidence at G.G.'s adjudication proceeding established the following. As victim was walking home from school, G.G.'s co-conspirator called for him to come across the street. Victim complied and co-conspirator spoke several words that were inaudible to victim. As victim turned to walk away, co-conspirator then told victim he wanted to see what was in victim's pockets and bag. Victim emptied his pockets and opened his bag. Co-conspirator and G.G. both peered into the bag and co-conspirator took a geometric compass from victim. Co-conspirator and G.G. then left the scene. Throughout the entire incident, G.G. spoke not a single word and made no threatening physical movements. In finding G.G. guilty of criminal conspiracy, the court stated:

 The definition of conspiracy includes with the intent of promoting or facilitating its commission and you will recall that the agreement under conspiracy can be tacit or implied. The difficulty here is we have got two juveniles and obviously the intimidating effect of two large juveniles together against this victim certainly enhanced his fear and reasonable fear for injury under the robbery statute.

 I find that as a factual matter [G.G.] made no verbal or physical acts in furtherance of the conspiracy in that he didn't reach into the bag and he didn't make any remarks. The issue that I am struggling with is his mere presence certainly facilitated and promoted this robbery ... taking place. I am going to find on the conspiracy but not find on the robbery and if the parties want to submit briefs and take exception to that and petition for reconsideration, I will certainly take a look at it but it's just my belief that he has a very intimidating hulking body and piercing eyes and look and I am sure that his presence certainly promoted and facilitated the commission of this crime by his mere presence. So we are not finding on the robbery for [G.G.] but I do think that he was part of the conspiracy.

In view of the record before us, we are constrained to conclude that the evidence was insufficient to prove the crime of criminal conspiracy beyond a reasonable doubt. The trial court specifically found that G.G. made no verbal or physical acts in furtherance of the conspiracy, but nonetheless found him guilty. Mere association or presence at the scene of a crime is insufficient to establish a conspiracy. *Commonwealth v. Lawson,* 437 Pa.Super. 521, 650 A.2d 876 (1994); *Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 636 A.2d 1173 (1994). The record is

devoid of any evidence of an agreement between G.G. and his alleged co-conspirator. As such, his conviction of criminal conspiracy is reversed.

We have reviewed appellants' due process argument. After considering it in light of the amendments to the Act and the policies underlying our juvenile system, we conclude that due process does not require that a juvenile be accorded the right of a jury trial at a juvenile adjudication proceeding. We have also reviewed the respective sufficiency of the evidence claims. The evidence in J.F.'s case was sufficient to prove his guilt of IDSI beyond a reasonable doubt. In G.G.'s case, the evidence was insufficient to prove his guilt of criminal conspiracy beyond a reasonable doubt.

Accordingly, the order entered at 494 HBG 1997 is affirmed. The order entered at 628 HBG 1997 is reversed and defendant is discharged.